from it? If it was, it was the same as the real article, for taste, appearance and quality is all there is of it, and one possessing the secret of it would do the greatest foolishness ever known by giving such secret away for $1,000. Without proof that the formula was what it is alleged to be, there was no basis for damages. If it were anything less, the plaintiff broke the contract when she delivered it, and if it were not it is most astonishing that she delivered it at all. If some of the article had been produced on the trial, the judge and jury might have got at least some notion whether it was the same "in. taste, appearance and quality" as genuine champagne.

If the motion to dismiss be scant, still the question of the verdict being contrary to evidence and unsupported, comes up on the motion to set aside the verdict and for a new trial.

The judgment and order should be reversed.

Judgment and order of the County Court of Kings county reversed, and new trial ordered; costs to abide the event. All concur, except HOOKER, J., who dissents.

(122 App. Div. 440.)

## In re FROELICH'S ESTATE.

(Supreme Court, Appellate Division, Second Department. November 29, 1907.)

1. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.

In construing a will, all its clauses and provisions must be read together in determining the intent of the testator, and the intent so gathered controls.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 955, 956.]

2. SAME—TESTAMENTARY TRUSTS — TRUST TO CONTINUE BUSINESS — RENTAL VALUE OF PREMISES.

A will gave the residue of testator's property in trust to take charge of his real estate, "collect the rents and income thereof," etc., specifying various trusts, among them to take charge of his stove fixtures business and foundry, etc.. and everything connected with said business, and to continue the business until his youngest child should reach majority, or as long as the net profits of the business should yield a designated profit. Held, that the foundry was a necessary incident of the business to be used by the trustees, and they were not required to charge the business with the rental value thereof.

3. JUDGMENT—RES JUDICATA — JUDGMENT CONSTRUING WILL — MATTERS CONCLUDED.

A judgment in an action to construe a will, which adjudges that a trust created by a will for the conduct of testator's business, including a foundry, is valid, but which does not decide any question as to whether the trustees in the conduct of the business should be chargeable with rent of the foundry, is not res judicata on the question of the liability of a substituted trustee for such rent, nor is he estopped by the allowance by the court of accounts of former trustees, which showed that they paid rent for the foundry.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1254–1258.]

4. ESTOPPEL—EQUITABLE ESTOPPEL—PREJUDICE.

The fact that trustees, empowered under a will to take charge of testator's business, including a foundry, paid rent for the foundry, and that their accounts for such payments were allowed by the court, does not

estop a substituted trustee from taking the position that rent should not be paid as against one who has not been induced to act to her prejudice by receiving the rents for former years.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Estoppel, §§ 144, 145.]

**5. TRUSTS—LIABILITY FOR LOSS.**

A will authorizing trustees to continue testator's business until his youngest child shall reach majority, or as long as the net profits shall yield a specified profit, makes it the duty of the trustees to close out the business when it becomes apparent that it will not earn the profit specified; but reasonable latitude must be allowed them in determining whether or not the business is capable of making the profit, and, in the absence of negligence or mismanagement, the trustees cannot be personally charged with a loss occurring during the time they conducted the business.

**6. EXECUTORS—COMPENSATION—CONTINUING BUSINESS OF TESTATOR.**

An executor is ordinarily confined to the commissions prescribed by the statute, and, where the business of the testator is continued under authority contained in the will, the services rendered in continuing it are deemed part of the duties of his office, and he cannot receive therefor any other than the compensation allowed by law, though an executor rendering special services beyond the general duties is entitled to additional compensation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 2117–2124.]

**7. TRUSTS—TRUSTEES—COMPENSATION—CONTINUING BUSINESS.**

Where a will authorizes trustees to continue testator's business, providing that out of the profits of the business a specified per cent. shall be paid to the trustees as compensation for their services in the management of the business, which per cent. shall be in addition to the commissions allowed by law, the trustees are not entitled to compensation in addition to the lawful commissions and the specified per cent.

Appeal from Surrogate's Court, Kings County.

Proceeding for judicial settlement of the account of Charles Froelich, substituted trustee of trusts created under the will of Andrew Froelich, deceased. From a decree of the surrogate (100 N. Y. Supp. 436), Mrs. Wolf appeals. Modified and affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, RICH, and MILLER, JJ.

Joseph M. Gazzam, for appellant.
James Troy, for respondent.

WOODWARD, J. The testator's will was probated by the surrogate of Kings county in the year 1886. By the third clause of the will a trust was created. It reads as follows:

"Third. I give, devise, and bequeath all the rest residue and remainder of my property, real and personal and mixed of what nature and kind soever and whatever the same may be at the time of my death to my friend Lewis S. Goebel and to my brother Philip Froelich in trust nevertheless to take charge of my real estate, collect the rents and income thereof, and out of the same pay all taxes, assessments, water rents, insurance, premiums and all moneys necessary to keep the buildings upon the said real estate in good repair and condition.

"And upon the further trust to pay over one-half of the net rents, and income of my said real estate to my wife Caroline Froelich quarter yearly for the support and maintenance of herself and my minor children and in lieu of dower.

"And upon the further trust to apply the remaining one-half of said net rents and income to the payment of any mortgage or mortgages that may be liens upon said real estate.

"And upon the further trust after the payment of all mortgages upon said real estate to invest the said one-half of said net rents and income upon bond and mortgage upon unincumbered real estate in the City of New York or Brooklyn for the benefit of my children.

"And upon the further trust to take charge of my stove fixtures and stove trimming business in the city of New York, city of Newark, New Jersey, and foundry in the city of Brooklyn together with all the stock of goods on hand, material, fixtures, machinery patterns, tools, implements and appurtenances; also all book accounts outstanding claims and in short every thing connected with my said business.

"And upon the further trust to continue the said business and carry on the same and to continue to carry on the same until my youngest child shall arrive at the age of twenty-one years, or as long as the net profits of said business shall yield ten per cent. upon an investment of fifty thousand dollars.

"And upon the further trust to sell and discontinue said business whenever my said executors and trustees shall deem it for the best interest of said estate so to do.

"And upon the further trust to retain out of the net profits of said business the sum of ten per cent. of such net profits as compensation to my executors and trustees for their services in the management of the said business. Said sum of ten per cent. to be in addition to the lawful commissions allowed them as executors and trustees.

"And upon the further trust to invest the net profits and income from said business, after deducting the said ten per cent. compensation to said executors and trustees upon bond and mortgage upon unincumbered real estate in the city of New York or Brooklyn or to deposit the same in some savings bank or banks of good standing in the city of New York or Brooklyn, for the benefit of my children.

"And upon the further trust to convert all my personal property not above mentioned into money and to invest the same for the benefit of my said children in the same manner as any other moneys are to be invested as above provided.

"And upon the further trust to pay and advance to each of my children as they respectively arrive at the age of twenty-one years or as they respectively marry, the sum of three thousand dollars.

"And upon the further trust immediately upon the arrival of my youngest child at the age of twenty-one years in case my said wife shall not then be living to divide all my estate real and personal and the accumulations of interest equally among my children, share and share alike after deducting all advances made as above provided to any of my children, so that each of my children shall have and receive an equal share of my estate. Should my said wife be living at the time my youngest child arrives at the age of twenty-one years then it is my will and pleasure that no division of my estate shall be made until after the death of my said wife."

The testator left considerable real estate, consisting of houses and lots, and also a foundry in the city of Brooklyn. At the time of his death the testator was engaged in conducting a general stove-trimming business and used this foundry in connection with such business. The accounting trustee, under the power and authority of the trust clause of the will, continued the testator's business, and used the foundry for the same purposes as the testator. The appellant insists the trustee should have charged the business with rent for use of the foundry, and that Caroline Wolf, the widow of the testator, was entitled to receive one-half the net rents derived from the foundry property as part of her one-half of the net rents of the real estate. It is contended that the foundry property is to be treated exactly like all

the other real estate left by the testator, and after the payment of the expenses of maintenance one-half the net rent under the provisions of the trust clause of the will should be paid to the widow for life. The accounting trustee insists that under the will he is not required to pay to himself any rent for the use of the foundry. It appears to have been the practice for years for the predecessors of the present trustee to charge the business with rent for the use of this foundry, one-half of which was paid the widow. For a time after the substitution of the respondent as trustee he also followed that practice, but subsequently declined to further do so upon the advice that the business was not legally liable therefor. The question is, therefore, sharply presented as to the proper construction of the trust clause in that respect.

In construing a will, all its clauses and provisions must be read together in determining the intent of the testator, and that intent so gathered must control. Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464. What is said by the testator in the earlier parts of the trust clause must be considered in connection with the subsequent clause relating to the continuance of the business. We think the general language of the earlier part of the clause, in which the testator directs his trustees to take charge of his real estate, "collect the rents and income thereof," etc., is qualified and modified by the later direction to his trustees to take charge of his stove fixtures and stove-trimming business "and foundry in the city of Brooklyn, * * * and in short everything connected with my said business," and continue said business in the manner directed. There is no specific direction for the business to pay rent. The foundry was a necessary incident to that business, and most intimately connected therewith. The fixtures and other property in it would have been of little use, except when used in connection with it. It was the clear intention of the testator that this foundry was to be treated as a part of the investment of the business, and to be used by the trustees in the future conduct of the business as a necessary incident to it. It was not to be rented to third parties, but to be used by the trustees themselves, and, in the absence of any specific direction that they should charge the business with its rental value, we think they cannot be required so to do. The question is simply one of construction, and we believe the argument is all in favor of the position taken by the respondent in this regard. If this is the proper construction, it is no answer that in prior years rent had in fact been allowed. We see nothing in those acts estopping the trustee from now insisting on the proper construction of the will.

It is contended by the appellant that the judgment construing the provisions of this will previously rendered (Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464) makes the question here involved res adjudicata, especially when taken in connection with the former accountings of prior trustees, in which their accounts crediting themselves and charging the appellant with rent of the foundry property were passed and approved. The counsel for the appellant relies on the case of Thorn v. De Breteuil, 179 N. Y. 64, 71 N. E. 470, as sustaining this contention. We have examined the record in the case of Goebel v. Wolf, supra, and we can find nothing in that

case which in our opinion precludes or estops this court from maintaining and enforcing the views now entertained and above expressed upon the question of the rental of the foundry. The findings and judgment made in the action to construe the will simply adjudge the trust created by the will as to the real estate and for the conduct of the testator's business valid, and makes certain other findings in no way relating to the questions here involved. The decree does not purport to find or decide any question as to whether or not the trustees in the conduct of the business should pay rent to themselves for the use of the foundry property. That question does not appear to have been directly or inferentially involved in this disposition of the action for a construction of the will. It is true, too, that the predecessors of the present trustee paid rent for the foundry property, and their accounts for such payments were allowed and passed. We cannot see, however, that those decrees settling trustees' accounts estop the present trustee from taking his present position that rent should not be paid. The appellant has not acted or been in any way induced to act to her prejudice by receiving the benefit of rents for former years. She simply received more than she was legally entitled. This ought not to estop the substituted trustee from asserting that the practice followed by his predecessors was wrong and should be discontinued. Especially is this true where the respondent's predecessor in office was Mrs. Wolf, the appellant here, and the accounts rendered were her own accounts. We find nothing in Thorn v. De Breteuil in conflict with this conclusion, where a prior adjudication had been expressly made covering the point brought into dispute for a second time, and where executors and trustees had in good faith acted upon the judicial construction put upon the will under consideration.

The trustee's account shows that the business conducted under the trust clause in the will showed a net loss of $2,286.48, and the appellant contends the trustee should have discontinued the business, and is personally chargeable with the loss which occurred during his administration. The provisions of the will under which the business was continued authorized the trustees "to continue the said business and carry on the same and to continue to carry on the same until my youngest child shall arrive at the age of twenty-one years, or as long as the net profits of said business shall yield ten per cent. upon an investment of fifty thousand dollars." We think the fair construction of this clause made it the duty of the trustees to close out the business when it became apparent that the business would not earn the 10 per cent. profit specified. At the same time reasonable latitude should be allowed the trustee in determining whether or not the business was capable of making the 10 per cent. profit anticipated. It is common experience that many kinds of business may encounter temporary and unexpected losses, and may perhaps for a given year even run at a loss, when in fact the business as a whole may prove profitable. The trustees, in view of this common experience, would be justified, in our judgment, in continuing the business for sufficient length of time until it could be determined, by an honest effort to make the business a success, whether the business as a whole is a paying one. We have examined the record in this case, and cannot

discover in it sufficient to justify the court in finding that the trustee under the circumstances was required sooner to discontinue the business. We do not think the evidence would justify the court in charging him personally for the losses suffered. There is no evidence of any negligence or mismanagement of the business on the part of the trustee; while, on the other hand, there is some evidence that the failure to realize profits was in part due to a competition in business organized and carried on with the approval, if not the active co-operation, of the appellant. There is no little justice in the contention that under such circumstances the contestant ought not to charge the substituted trustee with a personal liability for the comparatively small loss the business conducted by him sustained.

It is contended that error was committed in allowing the trustee for moneys drawn from the business and paid himself as "salary" for managing the business, aggregating $4,840. It appears that prior to the trustee's appointment as substituted trustee in 1901, and while his mother (now Mrs. Wolf), the appellant in this case, was acting as trustee, John M. Wolf, the present husband of the former trustee, was employed at a salary as superintendent and manager of the business, and was paid for such services a salary even larger than that subsequently received by the respondent. Wolf left the business, and without an active head to look after its details, and this respondent, who had been also employed in the business and was more or less familiar with it, was appointed trustee in the place and stead of his mother, who resigned. From that time on he devoted his time and attention to its conduct, and rendered substantially the same services as formerly given by Wolf, and withdrew from the business a weekly salary for the same. It would seem that from every consideration of justice and equity the trustee should under such circumstances be paid a compensation commensurate with the services rendered, and little sympathy can be had for one objecting to its allowance. Nevertheless we have been unable to find authority for its allowance without violating the well-recognized rules and principles of law which govern such cases. The will expressly provides for and authorizes the retention "out of the net profits of said business the sum of ten per cent. of such net profits as compensation to my executors and trustees for their services in the management of the said business. Said sum of ten per cent. to be in addition to the lawful commissions allowed them as executors and trustees."

We are aware that in certain special and peculiar cases, where an executor or trustee renders to the estate he represents special services outside and beyond his general duties as executor or trustee, proper allowances have been made for their payment over and above the commissions allowed by law, as where a former manager was appointed temporary administrator during a contest over the probate of a will, and was directed to temporarily carry on the decedent's business (Matter of Moriarity, 27 Misc. Rep. 161, 58 N. Y. Supp. 380), or where one of several executors by agreement with the widow and heirs rendered services for nine years, not only in collecting rents, but by manual labor in keeping the trust property in repair (Matter of

McCord, 2 App. Div. 324, 37 N. Y. Supp. 852), or where a skilled machinist at the request of the heirs continues a manufacturing business of the testator, rendering services therein for which he was peculiarly fitted by his mechanical training (Matter of Braunsdorf, 13 Misc. Rep. 666, 35 N. Y. Supp. 298), or where, a testator leaving five farms, one of the executors, at the request of the others, including the widow, took charge of the real estate for some 15 years (Lent v. Howard, 89 N. Y. 169). In each of the above cases the services rendered were quite outside the duties imposed upon the executor or trustee by the instrument or order under which they acted, and in some cases the services were rendered under a special arrangement with the interested parties. In this case the will under which the respondent acted expressly provided for the compensation to be paid the trustee for the management of the business, and it is impossible to say that such services as were rendered were outside the duties imposed upon him by that instrument. An administrator or executor is ordinarily confined to the fees or commissions prescribed by the statute, and, if the business of the decedent be continued under authority contained in the will, the services rendered by the executor in continuing it are deemed part of the duties of his office, and he cannot receive therefor any other than the compensation allowed by law. Clausen v. Puvogel, 114 App. Div. 455, 459, 100 N. Y. Supp. 49; Matter of Hayden, 54 Hun, 197, 7 N. Y. Supp. 313, affirmed 125 N. Y. 776, 27 N. E. 409; Matter of Dummett, 38 Misc. Rep. 477, 77 N. Y. Supp. 1118; Collier v. Munn, 41 N. Y. 143. The enforcement of the general rule in this case works a hardship; but the rule is a salutory one, and one which this court cannot disregard.

We see no reason for disturbing the findings of the Surrogate as to certain expenses incurred in the business, and covered by small sums drawn from the business from time to time.

The decree appealed from should be modified in the manner above indicated.

Decree of the Surrogate's Court of Kings county modified in accordance with opinion of WOODWARD, J., and, as modified, affirmed, without costs. GAYNOR, RICH, and MILLER, JJ., concur. HIRSCHBERG, P. J., not voting.