In the Matter of the Accounting of MORTON ROSENBERG et al., as Executors and Trustees under the Will of CHARLES ROSENBERG, Deceased.

ETHEL MAYER et al., Appellants and Respondents; MORTON ROSENBERG, Respondent and Appellant; BARBARA ROSENBERG, Respondent.

(Argued April 25, 1929; decided May 28, 1929.)

*Abel E. Blackmar, Harold R. Thorn* and *Carl D. Isaacs*
for Ethel Mayer et al., appellants and respondents. The
executor, Morton Rosenberg, is not entitled to com-
pensation in excess of executor's and trustee's com-
missions for carrying on the business after his father's
death. (*Matter of Hayden,* 54 Hun, 197; 125 N. Y. 776;
*Matter of Froelich,* 122 App. Div. 440; 192 N. Y. 566;
*Matter of Popp,* 123 App. Div. 2; *Clausen* v. *Puvogel,* 114
App. Div. 455; *Collier* v. *Munn,* 41 N. Y. 143; *Matter of
Dummett,* 38 Misc. Rep. 477.) Morton Rosenberg was
not a partner with his father, the testator, in the business
carried on under the name of Model Knitwear Manu-
facturing Company. (*National Cash Register Co.* v.
*Remington Arms Co.,* 242 N. Y. 99; *Ely* v. *Holton,* 15
N. Y. 595; *Benton* v. *Wickwire,* 54 N. Y. 226; *Matter of
Prime,* 136 N. Y. 347; *Homnyack* v. *Ins. Co.,* 194 N. Y.
456.)

*George W. Wickersham, Edward A. Niles* and *Henry A.
Blumenthal* for Morton Rosenberg, respondent and appel-
lant. The surrogate's finding of partnership was correct
and should be reinstated. (*Stewart* v. *Robinson,* 115
N. Y. 328; *Bell* v. *Hepworth,* 134 N. Y. 442; *Cahill* v.
*Haff,* 248 N. Y. 377.) The referee and the Appellate
Division properly awarded compensation for Morton
Rosenberg's services outside of his official duties. (*Matter
of Hayden,* 54 Hun, 197; *Matter of Froelich,* 122 App. Div.
440; *Collier* v. *Munn,* 41 N. Y. 143; *Matter of Popp,* 123
App. Div. 2; *Clausen* v. *Puvogel,* 114 App. Div. 455;
*Matter of Dummett,* 38 Misc. Rep. 477.)

*C. Alexander Capron* for Barbara Rosenberg, respondent.

KELLOGG, J. Charles Rosenberg, prior to February, 1916, was engaged in the business of merchandising knit goods, which he conducted under the name of Model Manufacturing Company. Morton Rosenberg, his son, was employed in the business as a traveling salesman. In the years 1913, 1914 and 1915 the business was conducted at a net loss, which, in 1915, exceeded $5,000. On February 1st, 1916, Morton Rosenberg was installed as business manager and thereafter, until the death of his father on July 4th, 1917, had exclusive charge of the affairs of the company. During these seventeen months the business showed a net profit of $33,559.35. With the knowledge and consent of Charles Rosenberg, one-half of the profits thus earned, or $16,779.67, was credited, on the books of the company, to Morton Rosenberg. Charles Rosenberg left a will in which he named as executors his wife, Barbara Rosenberg; his son, Morton Rosenberg; and his daughter, Dorothy R. Hyams. He made express provision that they might continue the business as long as they deemed it expedient so to do. The executors determined to go on with the business, and Morton Rosenberg continued in the exclusive management thereof. The business expanded greatly, and was very successful. From July 4, 1917, to February 1, 1918, the profits exceeded $23,000; from February 1, 1918, to December 31, 1918, $39,000; for the year 1919, $60,000; for the year 1920, $29,000; for the year 1921, $38,000; for the year 1922, $35,000; and for the year 1923, $23,000. During all these years one-half of the profits earned was credited to the account of Morton Rosenberg.

A proceeding was begun in Surrogate's Court, in June, 1920, by one of the children of Charles Rosenberg, to compel an accounting by the executors. Thereupon the executors petitioned for a voluntary accounting, and filed their accounts in Surrogate's Court. Objections to the account were filed by several of the children of Charles Rosenberg. Particular objection was made to the allow-

ance to Morton Rosenberg of credits for one-half the profits of the business, from the date of the death of Charles Rosenberg to the date of the filing of the account. The surrogate determined that Morton Rosenberg, at the time of the death of his father, Charles Rosenberg, was an equal partner in the business; that, after the death of his father, he continued to be the owner of one-half of the business; that the estate was the owner of the other half; that each was entitled to one-half of the profits. In December, 1923, the Appellate Division, on an appeal to it, made an intermediate order appointing a referee to take further proof upon the issue of partnership. In April, 1925, the Appellate Division, upon a report to it by the referee, made a further order adjudging that Morton Rosenberg and his father, Charles Rosenberg, had not been partners; that the relationship between them had been that of master and servant; that Morton Rosenberg was not entitled to one-half the net profits arising from the business during the administration of the estate. It referred the matter back to the referee to take further proof as to the reasonable value of the services performed by Morton Rosenberg in managing the business of the company for the estate. In June, 1927, the Appellate Division, upon a further report from the referee, made a final order adjudging that Morton Rosenberg and Charles Rosenberg had not been partners, and that Morton Rosenberg was not entitled to one-half of the profits arising from the business after the death of Charles Rosenberg. However, it determined that Morton Rosenberg, in addition to his commissions as executor, for his services in managing the business, was entitled to the sum of $7,500 per year throughout the period since the death of his father. It modified the decree of the surrogate accordingly. From this order Morton Rosenberg appeals, asserting that he is entitled to be credited with one-half of the profits of the business since the death of Charles Rosenberg. The contesting

children appeal, asserting that Morton Rosenberg was not entitled to be paid for his services at the rate of $7,500 a year, or otherwise than through an award of commissions to him as executor.

There is ample testimony that Morton Rosenberg, during the period from February 1st, 1916, to July 4th, 1917, was the partner of Charles Rosenberg. Samuel Blaufeld testified to a conversation with Charles Rosenberg in the latter part of the year 1915. Charles said that he was having difficulty in holding Morton, who wished to branch out for himself; that he would like to have Morton and the witness take over the business. Later, on the refusal by the witness to enter a partnership with Morton, Charles said that he would himself form a partnership with his son. In the latter part of 1916 Charles told the witness that he and Morton had had a wonderful year; that they had made about $25,000 the first year they were in business; that it would not be long before Morton would have his partnership paid for. Moriz Glauber testified that Charles had told him of his offer to the witness Blaufeld; that he had later changed his mind and taken Morton into business; that he had concluded to give Morton, as partner, a one-half interest in the business; that the partnership was to begin on February 1st, 1916. In the latter part of 1916 Charles told the witness that he and Morton had each made during the year a profit of $12,000. Harry Hammel, for many years a bookkeeper of the Model Manufacturing Company, testified that Charles Rosenberg had on many occasions told him that Morton was his partner. John J. Clark, an attorney, testified that in 1916 Charles Rosenberg told him that he had given Morton a half interest in the business; that Morton had put life into the thing; that Morton's share for the year was more than $12,000. Alvin Schwartz testified that in 1915 Charles Rosenberg had told him that he intended to

make Morton a partner; that in 1916 Charles told him that Morton was then his partner.

In corroboration of the admissions thus made by Charles Rosenberg, there is the undisputed fact that from February 1st, 1916, to July 4th, 1917, Morton Rosenberg, with the knowledge of Charles Rosenberg, and by his direction, was credited, on the books of the Model Manufacturing Company, with one-half of the net profits of the business, earned by the company during that period. " The receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment: * * * as wages of an employee or rent to a landlord." (Partnership Law [Cons. Laws, ch. 39], § 11, subd. 4.) There is no evidence that the profits credited to Morton Rosenberg were received as wages. On the contrary, the evidence indicates that the profits were received by Morton Rosenberg as partnership profits precisely as they were received by Charles Rosenberg. There is corroborative proof of the admissions, also, in the fact that on the first day of February, 1916, at the direction of Charles Rosenberg, an entirely new set of books was opened for the Model Manufacturing Company; that thereafter, in contrast with the previous usage, no items relating to the private matters of Charles Rosenberg were entered in the books; that no items except those relating to the conduct of the business of the company were entered. The proof seems amply sufficient, therefore, to raise the statutory presumption, arising from the sharing of profits, that the relationship of partners existed between Charles Rosenberg and Morton Rosenberg.

There is, also, strong proof that there was an agreement between Charles Rosenberg and Morton Rosenberg that they would bear equally the losses of the business. The witness Blaufeld testified that in his conversation with Charles Rosenberg at the end of the year 1916, the latter

said that Morton, while receiving one-half the profits, was not to draw thereupon except for necessary personal expenses. The witness stated: "But he did say, also,— he was very firm about this; he said the balance of the money would have to remain in the business in order, should there be any losses of any kind, that Morton was to stand his part of the losses just the same." The witness Alvin Schwartz heard a conversation between Charles and Morton, in relation to the traveling expenses of salesmen, in which the following statement was made by Charles: "Whatever you say goes, you lose half the same as I do." The witness Harry Hammel related a conversation with Charles in which the latter said that "Morton Rosenberg could not withdraw the amount to his credit;" that "it had to be left there at the risk of the business."

That there was an agreement between Charles Rosenberg and Morton Rosenberg that the latter would leave in the business his share of the profits as security for the payment by him of one-half the losses, is corroborated by the entries in the company books. On February 1st, 1916, when the partnership originated, if ever, the newly opened books of the company credited Charles Rosenberg with $18,239.93, the amount of capital left by him in the business. Morton Rosenberg was credited with $182.60, then owed him by the company. On February 1st, 1917, the profits earned by each had been $12,995.94. Of his share Morton had withdrawn during the year the sum of $2,416.92. The balance of his profits had not been withdrawn. Accordingly the books show, under the heading "Capital Liabilities," as of January 31, 1917, an item "Charles Rosenberg $36,102.95," and immediately thereunder the item "Morton Rosenberg $10,761.62." From February 1st, 1917, to July 4th, 1917, the date of the death of Charles Rosenberg, one-half the net earnings was $3,783.73. Morton's withdrawals had been $1,509.40. Again, under "Capital Liabilities"

Charles Rosenberg is credited with $49,890.10 and Morton Rosenberg with $13,035.95. These entries were made under the personal supervision and direction of Charles Rosenberg.

For several years after the death of Charles Rosenberg the annual net profits of Morton Rosenberg received similar bookkeeping treatment. From July 4th, 1917, to January 31st, 1918, the net profits to Morton, less withdrawals, were such that, on the latter date, his accumulated savings remaining in the business were $28,188.37. Accordingly, on the balance sheet for January 31st, 1918, appearing in the books of the company, Morton Rosenberg, under the item " Capital," is credited with $28,188.37. From January 31st, 1918, to December 31st, 1918, the net profits to Morton, less withdrawals, were such that on the latter date his accumulated savings remaining in the business were $50,841.98. Accordingly, on the balance sheet for December 31st, 1918, under the item " Capital," Morton is credited with $50,841.98. From December 31st, 1918, to December 31st, 1919, the net profits to Morton, less withdrawals, were such that, on the latter date, his accumulated savings remaining in the business were $53,543.24. Accordingly, on the balance sheet for December 31st, 1919, under the item " Capital," Morton is credited with $53,543.24.

What could have persuaded Morton to leave in the business this large sum of money? It was not a loan; it earned no interest. Why were his annual net profits, both during the period from February 1st, 1916, to July 4th, 1917, when his father was alive, and during the subsequent period from the latter date to December 31st, 1919, credited under the legend " Capital " or " Capital Liabilities? " If his earnings became " Capital " by his consent, and with the assent of his father, as clearly appears, then Morton was complying with that term of the agreement between the two, disclosed by the witness Blaufeld, which required Morton to leave his profits in

the business " to stand his part of the losses." Indeed, without the testimony of any of the witnesses as to the express admissions made by Charles Rosenberg, the entries made during the first period, with the consent of both the father and the son, are virtually conclusive to establish that the two were partners. How else could Morton Rosenberg have become a creditor for a " Capital " asset than as a full partner in the firm of the Model Manufacturing Company? Equally, the entries made during the second period conclusively establish that Morton continued to furnish capital to the business in the character of a partner with the estate of his father.

It is said that the two could not have been partners, because they did not equally contribute and own the capital. Thus, at the outset, the contributions of Morton were $182.60; the contributions of Charles, $18,239.93. It is not necessary to the constitution of a general partnership that the partners should be proportionate joint owners of its assets. The capital may vest and remain in one or more of the partners who have furnished it. (*Brigham* v. *Dana*, 29 Vt. 1, 10; *Orvis* v. *Curtis*, 157 N. Y. 657, 662; *Moore* v. *Huntington*, 7 Hun, 425.) Nor is it singular that Charles Rosenberg should have consented to an equal partnership with Morton. The business had been a failure for three years. Charles took little interest therein and could not make it a success. His one chance, not to lose all the money invested, was to join Morton as his partner and contribute to the joint venture the moneys already invested. How well Charles Rosenberg builded in making the arrangements the event has proven.

The contestants cite the fact that for two years after the death of Charles Rosenberg, Morton was credited on the books of the company with an annual salary of $7,500 for managing the business. It is argued that this indicates that Morton was an employee, not a partner. The premise of the argument is faulty. It omits to note that during these two years Morton was

also credited with profits to the extent of more than $30,000. With that fact remembered, the salary credit greatly helps Morton Rosenberg's case: It shows that he was credited as part owner with half the profits, and as manager of the estate, for his services thereto, with the sum of $7,500 annually as salary. It may be remarked in passing that the salary credit was subsequently canceled and the amounts named have never been withdrawn.

It would seem to be conclusive that Morton Rosenberg and Charles Rosenberg entered into an agreement whereby each was to share equally the benefit of profits and the burden of losses, and that the agreement created a partnership between them. Nothing tends to refute this conclusion except some of the acts of Morton himself. After the death of his father, Morton made income tax reports in which he failed to indicate certain moneys received by him as partnership income. Also, on August 23d, 1919, Morton, together with his co-executors, signed a certificate that the business of the Model Manufacturing Company was owned by the estate of Charles Rosenberg, and filed the same as required by section 440 of the Penal Law. In regard to the first it may be said that the reports were made up by the company bookkeeper, and Morton signed, relying upon his information and knowledge of the subject. As to the certificate, as well as the reports, it may be said that whether or not there was a partnership was in great part a legal question; that as to this question Morton relied upon an attorney who seems to have had no just convictions upon the subject. Thus, the contestants' witness Lipschitz relates a conversation which he overheard between Morton Rosenberg and Sam Hyams. Hyams asked Morton what the lawyer said. Morton replied: " He said, I am no partner, but I should claim 50%." Upon a hearing before the surrogate, held as late as January, 1921, after an entire volume of testimony had been taken, Morton's attorney was still uncertain whether there was a partnership or not.

He then said to the court: " I am not certain in my own mind now just the position to take on that proposition — whether it is a salary or a partnership or what it is. It is a close question." If a counselor at law could not recognize in the proof the definite tokens of partnership, viz., an equal sharing of profits and of losses, it does not seem fair to decide against his client because his view of the law governing his relationship with his father was mistaken.

We think that the Appellate Division was in error in finding that there was no partnership and that Morton Rosenberg was not entitled to be credited with one-half the profits of the business after the death of Charles Rosenberg until its affairs were liquidated. We think also that the Appellate Division was in error in finding that Morton Rosenberg, for his services in managing the interest of the estate in the company business, was entitled to an allowance in addition to commissions as executor. (*Matter of Hayden*, 54 Hun, 197; affd., 125 N. Y. 776, on opinion of Barker, P. J., below; *Matter of Froelich*, 122 App. Div. 440; affd., 192 N. Y. 566.)

The order of the Appellate Division dated June 10, 1927, should be modified accordingly and, as modified, affirmed, with costs to appellant Morton Rosenberg in this court and in the Appellate Division, payable out of the estate.

Cardozo, Ch. J., Pound, Crane, Lehman, O'Brien and Hubbs, JJ., concur.

Ordered accordingly.