No. 35,150

L. D. Davidson, *Appellee*, v. E. J. Shaffer, *Appellant*.

(113 P. 2d 90)

Opinion filed May 10, 1941.

*Robert C. Foulston, George Siefkin, John F. Eberhardt*, all of Wichita, *C. M. Williams, D. C. Martindell* and *Wesley E. Brown*, all of Hutchinson, for the appellant.

*William J. Wertz, Vincent F. Hiebsch*, both of Wichita, *J. N. Tincher, Clyde Raleigh, Leaford F. Cushenbery*, all of Hutchinson, *W. L. Cunningham, D. Arthur Walker* and *William E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to dissolve an alleged partnership, to obtain an accounting between the alleged partners, and for the appointment of a receiver of the property claimed to belong to the partnership. After a hearing the trial court appointed a receiver *pendente lite* and the appeal is from that order.

The sole question here is whether or not the trial court was correct in appointing a receiver for certain oil properties which constitute the only remaining property in which the parties have joint interests.

Prior to January, 1937, both plaintiff and defendant had had considerable experience in the oil business. At that time defendant had become quite wealthy and was extremely active in acquiring and developing oil properties. During the month of January, 1937, some sort of a business agreement was made between the plaintiff and defendant. This agreement was oral.

Plaintiff Davidson alleged and testified that he and defendant Shaffer entered into what amounted to a general partnership agreement; that plaintiff was to locate likely leases and submit them to

Shaffer, who could accept or reject them as he chose. If he accepted them, defendant was to advance the necessary money for acquisition of the acreage. Defendant then had the right to drill, operate and develop the acreage so obtained or to employ third persons to do so. Defendant was to advance all money. Plaintiff was to be paid his expenses or living costs not to exceed $100 a month. All oil properties acquired were to be owned jointly by plaintiff and defendant. Expenses incurred in drilling, acquiring, developing and equipping the leases on any of the partnership properties, plus expenses and money paid plaintiff to live on and depreciation on tools furnished would be returned to defendant out of profits from the joint venture. Plaintiff testified no mention was made about defendant having a right to interest on the money he put into the partnership.

Defendant's contentions in his answer and the general purport of his testimony differed from plaintiff's version of the agreement in a number of particulars. Defendant denied that any general partnership was agreed upon. He contended that the original agreement related to but one lease and that subsequently arrangements were made for what might be termed a series of enterprises involving many properties. He denied having promised to pay plaintiff expenses of not to exceed $100 a month. Defendant also contended that he was to receive interest on the money invested by him. One of defendant's principal propositions was that plaintiff's interest in the properties was to arise only after and in the event defendant had obtained from the properties the amounts expended by him in acquiring, drilling and developing them. Defendant also testified that he was to have complete charge of the properties. After the parties began working together in January, 1937, they became interested in numerous leases and oil properties located in Kansas and Oklahoma. On the motion for the appointment of a receiver it appears that the trial court heard evidence as to the facts concerning the various and numerous properties involved in the joint operations for some seven days. It will not be necessary to recount all of this testimony. It appears that as to some of the properties it had been agreed that plaintiff's interest therein should be less than fifty percent; that as to some of the properties other persons also were interested in the development; that plaintiff was personally present during several of the drilling operations and looked after the interest of the joint owners; that sometime in 1938 difficulty arose between the parties and this suit followed.

Plaintiff testified that the only properties now occupied by defendant in which he claimed an interest were what are known as the Wilson, Sanders and Dole leases. At the close of the hearing the trial court appointed a receiver for these leases.

There was also evidence that defendant had prior to the filing of this suit disposed of and mortgaged certain property in which the plaintiff claimed an interest. The evidence would even tend to show that defendant had concealed these facts from plaintiff and others who owned interests in these properties.

The first argument of defendant is that the appointment of a receiver was not justified because the evidence did not show that there was a partnership relationship between the parties. A detailed recital of the evidence as to a partnership would add very little to this opinion. However, Davidson testified that Shaffer told him that he had the tools and drilling equipment and money with which to drill wells; that Davidson had the experience and ability to acquire acreage on which wells should be drilled, and with Davidson's experience and connections and Shaffer's tools and money they should be able to work out some profitable deals together. Shaffer said to Davidson: "If you want to come in with me under that arrangement, I will furnish the tools and equipment and cash and an expense account and a hundred dollars to live on as against your experience in acquiring acreage, royalties, drilling blocks and the like and we will work them out together. I will drill on cost-plus reasonable depreciation for the tools and we will share fifty-fifty in the result."

There is evidence that Davidson accepted this proposition and that both parties proceeded to work under it for some time. In fact, the trial court made the observation at the time a receiver was appointed to the effect that "it seems we are all agreed now that there was some sort of a partnership arrangement entered into."

Without setting out the evidence in detail, we hold that the evidence above referred to was sufficient to justify the trial court in making a finding that there was a partnership.

Defendant argues that no partnership was established here because there was no evidence whatever that there was to be a joint control of the properties between these partners. The argument is that unless there is a joint control there can be no partnership.

Without stating the evidence in detail from which the court was warranted in assuming that there was a joint control in this case,

we hold that it was not necessary that there should be a joint control if the other elements to establish a partnership are present. It is but little more than a circumstance which should be taken along with other surrounding facts and circumstances to establish whether or not there was an actual partnership. See *McAlpine v. Millen,* 104 Minn. 289, 116 N. W. 583; *Associated Piping, Etc., Co., Ltd., v. Jones,* 17 Cal. App. 2d 107, 61 P. 2d 536; *Boreing, &c., v. Wilson, &c.,* 128 Ky. 570, 108 S. W. 914; *Omaha & Grant S. & R. Co. v. Rucker,* 6 Colo. App. 334, 40 Pac. 853.

The next point argued by defendant is that there was no partnership relation established because there was no provision for the sharing of losses. On this point the record discloses that the arrangement between Shaffer and Davidson was such that if any particular lease proved nonproductive Shaffer lost his money and Davidson lost his work. The fact that Shaffer would lose the money he had invested in his tools and Davidson would lose his time does not prevent the arrangement from being one for the sharing of losses. In *Shoemake v. Davis,* 146 Kan. 909, 73 P. 2d 1043, this court said:

"Just what technical designation should be ascribed to a business undertaking where one of two men agrees to contribute his money to the acquisition of an oil and gas lease, and the other contributes his knowledge and energy to the matter of obtaining such a lease, when their purpose is to make a profit by it? Sharing of losses? Yes, one will lose his money and the other his work if the project is a failure. Sharing of profits? Yes, if the venture is successful and there are profits to be shared. There is nothing in the decided cases nor in the textbooks which says that the sharing of profits and losses in a partnership or joint adventure must be the same in kind. Fairly considered, we think the agreement between plaintiff and defendant implied such a sharing of profits and losses, and was essentially a joint adventure." (p. 912.)

The next point argued by defendant is that there is no partnership proven because there was no joint ownership of the properties in question proven. Joint ownership is not an essential element of the partnership relation. It is only a circumstance which should be considered along with other facts and circumstances. (47 C. J. 666; *Grantham v. Conner,* 97 Kan. 150, 154 Pac. 246; *Matter of Rosenberg,* 251 N. Y. 115, 167 N. E. 190.) See, also, *Yeager v. Graham,* 150 Kan. 411, 94 P. 2d 317.

Furthermore, Davidson testified, "I was to have my interest from the start. . . . My interest was intact from the time I made the deal for it."

There is other evidence on the transactions of the parties, as for instance when Davidson testified that Shaffer agreed to carry Davidson in the Hill lease for an eighth interest free and Davidson testified he claimed an interest in the Haunschild-Smith and other leases.

The next argument of the defendant is that even should it be held that a partnership existed the appointment of a temporary receiver was improper because there was no evidence that the property involved was in any danger of being removed, destroyed or injured during the pendency of the action.

At the outset it should be stated that the question of whether or not a receiver should be appointed is ordinarily 'determined in the exercise of the sound discretion of the trial court.

In this connection defendant argues that there were no allegations in the petition and application for the appointment of a receiver that the property was in any danger. The petition alleged that the defendant had received and taken into his possession all of the income from the leases; that he had appropriated to his own use from the receipts of the partnership large sums of money belonging to it in an amount greatly in excess of the amount to which he was entitled and that he had concealed this from the plaintiff; that he was continuing to appropriate the partnership property and money to his own use and that he thereby diminished the assets and value of the partnership property.

We think this is a sufficient allegation that the property involved was in danger of being removed, destroyed or injured during the pendency of the action. There are many things that might occur during the exploration and development of an oil lease which would diminish its value. It would not do to say that in a situation where one partner was in complete control of the partnership property, which consisted of oil leases and oil wells, and concealed all the facts concerning the operation of the property from another partner that the other partner would not be in danger of losing valuable property thereby.

It must be remembered that this was an action for an accounting and to dissolve the partnership, and the appointment of this receiver was merely a step in the process of the litigation.

As to the argument that there was no evidence whatever to justify these allegations, it should be noted that the evidence in this case covered the operation of several leases which were not finally covered by the judgment in this case because the parties had made some

statement with reference to them. However, the practice and conduct of the defendant with reference to these leases was admitted for the purpose of establishing a general course of conduct, and as a circumstance bearing upon the question of whether or not the present property was in danger of being lost or destroyed.

With reference to the Sanders lease, there was evidence that Sanders was threatening to cancel the lease for failure to properly develop. There is evidence that Shaffer refused to say whether or not he would carry on additional development on the Sanders lease to prevent cancellation or forfeiture. He had sold the Hill lease, in which there seems little doubt that plaintiff had an interest, and the Haunschild-Smith leases to pay debts, part of which were incurred on other than partnership property. He was unable to tell at the time of the trial just how much he received for this. There was evidence that he had mortgaged the Dole, Wilson and Sanders leases to pay his indebtedness without consulting with plaintiff.

All these facts and circumstances were considered by the court in reaching a conclusion, which the trial court did reach, that this property was in danger.

The statute with reference to the appointment of receivers is G. S. 1935, 60-1201. It provides among other things as ground for the appointment of a receiver as follows:

"*First.* In an action . . . between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"*Sixth.* In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

We conclude that there was ample ground by which the trial court was justified in finding as a matter of fact that there was danger of the property in this case being lost, removed or materially destroyed.

As to the provision of the sixth subparagraph of the above section that a receiver may be appointed where they had theretofore been appointed by the usages of equity, the trial court in deciding the case stated that the partnership had no doubt reached an *impasse*. The trial court was no doubt thinking of the rule laid down in *Huston v. Cox*, 103 Kan. 73, 172 Pac. 992. That was a case where a receiver was appointed for a partnership while litigation was pending. The court stated:

"While the parties are merely cotenants of an incorporeal hereditament, the evidence was that they have reached an *impasse*. They cannot agree with respect to their rights, or the management of the property, or a disposition of it. There is no reason why a court of equity should not solve the situation; and meanwhile a receiver to hold the lease, protect the property, and perform other functions, is a proper and justifiable auxiliary." (p. 76.)

In *Bank v. Nelson*, 199 Wash. 631, 92 P. 2d 711, it was held:

" 'If the parties to a partnership will not trust each other, equity will not trust either of them to settle an affair in which each of them, but for their differences, would be entitled to share in equal degree.' (*Martin v. Wilson*, 84 Wash. 625.)"

To the same effect is the rule given in 2 Clark on Receivers, section 914 (*b*).

Also, see 47 C. J. 1220, section 931, where the rule is given as follows:

"A receiver will be appointed in a partnership suit for dissolution and accounting, or accounting after dissolution, where this is necessary for the protection of the rights and interests of the partners. It has been held proper to appoint a receiver where . . . the partner or partners against whom relief is sought have excluded the other partner or partners from their right to participate in the firm business, . . . although it is not shown that the partner in possession is insolvent, or that the property is in danger of being lost; where an insolvent partner is appropriating firm assets to his own use, where one partner has employed firm assets in carrying on his individual business; where the partner in possession is failing to keep a record of the operation of the business and to account to plaintiff, who is the owner or probable owner of an interest in the property; . . . where it is evident that the partners are in such disagreement that the business cannot be successfully carried on; and that the best interests of all would be served by such appointment."

We hold that the court was justified in appointing a receiver *pendente lite* under the first subdivision of G. S. 1935, 60-1201, and also under the sixth subparagraph.

What has been said here makes it unnecessary for us to consider other points that are raised in the brief of the defendant.

The judgment of the trial court is affirmed.