[No. 18147. In Bank.—March 1, 1894.]

## J. E. CHAPIN ET AL., RESPONDENTS, *v.* ALBERT BROWN, APPELLANT.

PARTNERSHIP—CONTRACT WITH INDIVIDUAL PARTNERS—PURCHASE OF LUMBER—DISTINCT PARTNERSHIP—ASSIGNMENT—NOVATION.—Where a partnership in the business of manufacturing and selling lumber made a contract with two of its members for the purchase of lumber who constituted a distinct copartnership, from which one of the partners withdrew, and into which from time to time third parties became interested under assignments of the purchasing contract, one of the original partners retaining an interest in the purchasing contract during all transactions under it, the mere fact that the lumber was delivered to and paid for by the new partnership as constituted of different members at the time of the delivery and payments made, without the consent of the original partnership to any release of liability upon the part of the partners to whom the purchasing contract was made, or to accept the new partners in the purchasing contract in their stead for any part of the obligation, does not establish a novation of the purchasing contract, and one of the partners with whom it was originally made is individually liable for all indebtedness due to the original partnership upon the purchase of lumber under the contract, by the new partnership.

ID.—ACTION TO DISSOLVE PARTNERSHIP—ACCOUNTING—PARTIES.—In an action to dissolve the original partnership, and to enforce the liability of one of its members for a balance due upon the purchasing contract, the strangers who became members of the new firm, under the assignment of the purchasing contract, are not necessary parties to the accounting.

ID.—PURCHASE OF LOGS FROM THIRD PERSONS.—Where logs were pur-
chased by the new partnership from third persons, and sawed in the mill
belonging to the original partnership, it is error for the original partner-
ship to charge a copartner interested in the purchasing contract, the
contract price for such lumber, and his liability is limited to payment
for the use of the mill in sawing the logs at the rate chargeable for saw-
ing only.

ID.—LUMBER PARTNERSHIP.—An association of persons for the purpose of
carrying on business together and dividing the profits between them,
and engaged in the manufacture and sale of lumber, under the name of
the "Sugar Pine Mill and Lumber Co.," is a partnership.

APPEAL from a judgment of the Superior Court of
Fresno County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*R. P. Davidson*, for Appellant.

*J. R. Webb*, and *L. L. Cory*, for Respondents.

The COURT.—On August 15, 1887, the plaintiffs and
the defendant were copartners, doing business in the
firm name of "Sugar Pine Mill and Lumber Co."
Their business was that of manufacturing and selling
lumber. They owned 160 acres of timber land, upon
or near which they had built a sawmill.

On August 15, 1887, a written contract between the co-
partnership and two of its individual members, namely,
Chapin and the defendant, Brown, was executed, by
which the copartnership agreed to sell to Chapin and
Brown, and the latter agreed to purchase, all the lumber
to be sawed from the timber then standing or fallen on
the said 160 acres of land, "or that may be sawed in the
mill of the said parties of the first part (the copartner-
ship) from other claims before finishing sawing the
timber from the above-described claim" (the 160 acres),
at the price of nine dollars per thousand feet, to be de-
livered in the mill-yard. The parties of the first part
further agreed that after the year 1887 they would de-
liver, as aforesaid, "an annual amount of one million
feet or more at the option of the said second parties."

The agreement contains other stipulations not relevant to the issues in this case.

On the same day (August 15, 1887) another agreement was executed between the copartnership and two others of its members, namely, T. E. Peckinpagh, and Charles Peckinpagh, by which the latter agreed to cut, haul, and saw into lumber all the timber on said 160 acres of land, and to stack the lumber in said mill-yard, for which they were to be paid six dollars per thousand feet. As to the amount of lumber to be sawed, they agreed to be governed by the above-mentioned contract with Chapin and Brown. For the purpose of performing this contract they were to have the use of said mill, but were to keep it in repair. This contract also contains matters not material to this case.

Chapin and Brown assumed to constitute a distinct copartnership, under the firm name of "North Fork Lumber Co." and transacted the business under their contract with the Sugar Pine Mill and Lumber Company in that name; but at some time prior to January 1, 1888, Chapin assigned his interest in their contract with the Sugar Pine Mill and Lumber Company to Brown, who agreed with him to perform all its obligations, and withdrew from the North Fork Lumber Company. Brown continued the business under the contract in the name of North Fork Lumber Company until January, 1888, when he assigned an interest in the contract to John Bartram; and on May 1, 1888, assigned another interest to B. F. Ellis. After these assignments Brown, Bartram, and Ellis constituted the North Fork Lumber Company, and conducted the business with the Sugar Pine Mill and Lumber Company under the lumber contract in that name.

In the fall of 1888 T. E. and Charles Peckinpagh assigned their contract with the Sugar Pine Mill and Lumber Company of August 15, 1887 (above set out) to the North Fork Lumber Company. By the performance of this contract on the part of the Peckinpaghs the North Fork Lumber Company became entitled to

receive from the Sugar Pine Mill and Lumber Company six dollars per thousand feet for manufacturing the lumber which they were to purchase from the latter company at the price of nine dollars per thousand. From and after this assignment by the Peckinpaghs, Charles Peckinpagh was employed by the North Fork Lumber Company at a salary, to do the sawing, and he continued in that position during the years 1890 and 1891.

The object of this action is to dissolve the Sugar Pine Mill and Lumber Company, to compel an accounting between its members, and especially between the co-partnership and the defendant, who, it is alleged, owes the concern a balance of $3,090 for lumber delivered to the North Fork Lumber Company during the year 1890, under the contract first above mentioned, called the "purchasing contract." The court found him to be individually responsible on that contract, and that he was indebted on that account to the other members of the company as follows: To Charles Peckinpagh, $427.45; to T. E. Peckinpagh, $471.85; to J. E. Chapin, $483.80, amounting to $1,383.18; and consequently that he was indebted to the copartnership (of which he was an equal member) in the sum of $1,844.14. The judgment was in accordance with this finding. The defendant appeals from the judgment and from an order denying his motion for a new trial.

1. The appellant contends that there was a novation of the purchasing contract by which the assignees of portions thereof were substituted for the original contractors (Brown and Chapin) by consent of the Sugar Pine Mill and Lumber Company, and therefore that appellant is not individually liable, as found by the court. It is not claimed, however, that there was any evidence of such novation, or consent thereto, by the Sugar Pine Mill and Lumber Company, other than the facts that the lumber was delivered to and paid for (so far as payments were made) by the North Fork Lumber Company, as constituted at the time of such delivery and payments. Brown never assigned all his interest in the

purchasing contract, but remained ·a member of the North Fork Lumber Company during all its transactions with the Sugar Pine Mill and Lumber Company. Nor is there any evidence that the latter company ever agreed or consented to discharge him or Chapin from their obligation on that contract, or to accept Bartram or Ellis in their stead for any part of such obligation. No objection on the ground of misjoinder or nonjoinder of parties to the action was made by demurrer or answer, or otherwise, in the court below, nor is any point made here on this ground. All the parties to the purchasing contract, and all the members of the Sugar Pine Mill and Lumber Company were before the court, and, as there is no novation of that contract, neither Bartram nor Ellis was a necessary party to the accounting. The state of accounts between the members of the North Fork Lumber Company is immaterial for any purpose of this action.

2. The only other point requiring special consideration arises on the following additional facts: During the year 1890, while Charles Peckinpagh was doing the sawing for the North Fork Lumber Company, as aforesaid, he and a Mrs. Bearden sold and delivered to the North Fork·Lumber Company a lot of logs cut from other lands than the 160 acres belonging to the Sugar Pine Mill and Lumber Company, and to which the latter company held no title. These logs were sawed by Charles Peckinpagh during 1890, while employed by the North Fork Lumber Company, as aforesaid, and produced 683,923 feet of lumber, which was in the mill-yard, and thence removed by the North Fork Lumber Company. The evidence tends to prove that these logs were sawed with the knowledge and consent of the plaintiffs, and with an understanding between plaintiffs and the North Fork Lumber Company that the latter was to pay the former for the use of their mill in sawing those logs only fifty cents per thousand. C. M. Peckinpagh testified that he and Mrs. Bearden sold those logs to the North Fork Lumber Company; that he as an employee

of the North Fork Lumber Company sawed them; that
he had a conversation with the North Fork Lumber
Company with reference to the use of the mill to saw
those logs; that he came to an understanding with them
as to the price—fifty cents per thousand, which was his
own proposal, and that he considered fifty cents per
thousand a fair price for the use of the mill.

Chapin testified that he knew the North Fork Lum-
ber Company were sawing the Bearden logs during the
summer of 1890, and made no objection to their sawing
those outside logs; and there is no evidence tending to
prove that T. E. Peckinpagh did not know and acquiesce
in that understanding between his brother and the
North Fork Lumber Company; nor any evidence that
the use of the mill in sawing those logs was worth more
than fifty cents per thousand.   Yet it appears that a
considerable portion, if not all, of the lumber manufac-
tured from those logs must have entered into the esti-
mate of the 1,030,000 feet alleged and found to have
been sold and delivered to defendant under the purchas-
ing contract of August 15, 1887, and charged to de-
fendant at the rate of three dollars per thousand, after
deducting six dollars per thousand for the sawing which
was done by the North Fork Lumber Company.

The appellant contends that the lumber produced
from those logs purchased by the North Fork Lumber
Company from the plaintiff, Peckinpagh, never was the
property of the Sugar Pine Mill and Lumber Company,
and therefore could not have been delivered as such to
the defendant or the North Fork Lumber Company
under the contract of August 15, 1887; and that the
Sugar Pine Mill and Lumber Company were entitled
to charge only for the use of the mill in sawing the logs
so purchased by the North Fork Lumber Company, at
the rate of fifty cents per thousand, and not three dol-
lars per thousand as per contract of 1887.   And in this
contention we think the appellant is clearly right.

It was stipulated at the trial that a certain written
statement of the accounts between the Sugar Pine Mill

and Lumber Company and the North Fork Lumber Company for the years 1890 and 1891 is correct. This account shows the amount of lumber sawed from the logs purchased by the North Fork Lumber Company during the year 1890 to have been 683,923 feet, and that the amount sawed from logs furnished by the Sugar Pine Mill and Lumber Company during 1890 and 1891 was only 735,121 feet; and also shows the amount of money paid by the North Fork Lumber Company to the Sugar Pine Mill and Lumber Company during those two years. The use of the mill in sawing the logs purchased by the North Fork Lumber Company would amount to nearly $342; and the lumber sawed from logs furnished by the Sugar Pine Mill and Lumber Company at three dollars per thousand would amount to about $2,205.35. So that the whole amount properly chargeable to the North Fork Lumber Company would appear to be $2,547.35, to one-fourth part of which the defendant is entitled as the owner of one-fourth interest in the Sugar Pine Mill and Lumber Company, deducting which the other partners (the plaintiffs) would be entitled to recover from defendant only $1,190.52. But said statement of accounts shows that during the years 1890 and 1891 the North Fork Lumber Company paid to the plaintiffs $1,313.63, leaving, according to the above calculation, a balance of only $596.89 due them. Yet the judgment in their favor against the defendant is for $1,383.18. The statement of accounts, however, contains an interest account not carried into the above which may change the result in favor of the plaintiffs, perhaps, to the extent of fifty dollars.

Although it is stipulated that said statement is correct, yet it is not in perspicuous form, and may not lead to a correct conclusion; but it is quite explicit as to the amount of lumber sawed in 1890 and 1891, and states the whole amount sawed in those two years to have been 1,419,044 feet, of which 683,923 feet were sawed from the logs purchased by the North Fork Lumber Company; and the testimony of the Peckinpaghs is that

those logs were sawed in 1890, in which year the court finds that the Sugar Pine Mill and Lumber Company sold and delivered to the defendant, 1,030,000 feet of lumber "*in accordance with and by virtue of said contract*" (of August, 1887); and that during the year 1891 they sold and delivered to defendant under said contract 389,044 feet; thus finding that all the lumber manufactured at the mill during 1890 and 1891 (1,419,044 feet), including that sawed from the logs of the North Fork Lumber Company, was sold and delivered to defendant under said contract of August 15, 1887, at nine dollars per thousand, but crediting the North Fork Lumber Company six dollars per thousand for cutting the logs and sawing them under the Peckinpagh contract, which had been assigned to the North Fork Lumber Company.

It therefore appears from the stipulated statement of accounts and findings of the court, that the defendant was charged three dollars per thousand for all the lumber manufactured from the logs purchased by the North Fork Lumber Company, whereas he should have been charged only for the use of the mill in sawing those logs at the rate of fifty cents per thousand. This is the only error shown by the record.

The evidence was sufficient to justify the finding that the Sugar Pine Mill and Lumber Company is a partnership. It shows that company to be an association of four persons for the purpose of carrying on business together, and dividing the profits between them. (Civ. Code, sec. 2395.) Moreover, Mr. Chapin, in his testimony, designated the members of the company as partners, and there is no evidence to the contrary.

The judgment is reversed, and the cause remanded for a new trial.