[L. A. No. 3466. Department Two.—July 15, 1915.]

M. P. WESTCOTT, Respondent, v. E. L. GILMAN, and EDMUND PEYCKE COMPANY (a Corporation), Defendants; EDMUND PEYCKE COMPANY, Appellant.

CONTRACTS—PARTNERSHIP—PURCHASE AND SALE OF FRUIT—CONSTRUCTION OF CONTRACT.—A contract providing for the carrying on of a joint account business between two parties with equal division of profits and losses, the business to. be the shipping of oranges and lemons which the first party is to secure without any expense to the joint account, on consignment, or if any purchases are made, the same to be made only with the consent of the other party, in each

and every instance when the amount of purchase exceeds one hundred dollars, the first party to furnish the packing house and to be entitled to five dollars per car for each car packed, the other party to furnish the funds required to handle the business and do the selling free of expense to the joint account, and all the legitimate packing-house expenses to be charged against the joint account, does not contemplate that the business shall be limited to the mere shipping of oranges, nor were the profits and losses or the liability to third parties limited to those arising from the·mere shipping; but such a contract was that of a limited partnership or joint venture, and the parties thereto are liable as partners to the parties selling or consigning fruit to the partnership, where it is not disputed that the purchases and consignments were made with the actual approval of both parties to the contract.

ID.—AUTHORITY OF PARTNERS.—It is elementary that each partner has authority to represent and bind the copartnership within the scope of the partnership business; and the fact that one of the parties to the contract was the fruit buyer for the joint venture, and that the other reserved the right to veto prospective purchases if the price was not satisfactory to it, are not determinative of the question as to whether the contract was one of partnership; at least, so far as the rights of third parties were concerned.

ID.—COMMUNITY OF INTEREST—DETERMINATION OF PARTNERSHIP.—The contention that under this contract the nonexistence of a partnership is shown because there was no community of interest in procuring the fruit (which can only mean that because one party was to devote his services to the procuring of fruit, precisely as the other was to devote its services to the handling and sale of it, each without charge), is untenable.

ID.—PROFIT SHARING—ELEMENTS CONSTITUTING PARTNERSHIP.—While the element of profit sharing does not alone and of itself establish a partnership, it is an essential element of every partnership. A partnership, especially where the rights of third parties are involved, is to be determined by the contract, taken with the conduct and the dealing with the world of those who are the parties to it. If that contract and if those dealings, so far as the world is concerned, measure up to the partnership relation, with the joint duties and liabilities attaching thereto, then so far as third persons are concerned, who have had dealings with them, the defendants are partners.

ID.—RIGHTS OF PARTNERS—RIGHTS OF THIRD PARTIES—CONSTRUCTION OF CONTRACT.—The all-important difference in construing partnerships and relationships of this kind as between the parties themselves upon the one hand, and as between the parties themselves and those who have dealt with them on the other hand, is, that as between the parties themselves, when the rights of no third person are involved, the question is one of determination merely upon the letter of the contract and the conduct of the contracting parties to each

other under it. When, however, the rights of third parties are involved, the basis of the inquiry shifts materially, and the fundamental questions are, what had those third parties the right to believe from the language of the contract and from the conduct of the parties to it as affecting them, and not as affecting each other. Each case is adjudicated upon its own facts.

ID.—PARTNERSHIP FOR ONE OR TWO ADVENTURES.—A partnership may be organized for the prosecution of one or two adventures, as well as for the conduct of a general and continuous business.

ID.—LEGAL EFFECT OF CONTRACT—KNOWLEDGE OF PARTIES OF IMMATERIAL.—It is not of the essence of a partnership that the parties to it should have known that their contract in law created a partnership. If by contract or by conduct or by both they have in point of law engaged in a partnership venture, so far as third persons are concerned, they cannot be heard to deny the relationship and the liabilities arising therefrom.

ID.—CONTRACT CONSTITUTING PARTNERSHIP—SECTION 2395, CIVIL CODE. The contract in suit was one for the association of two persons to carry on a definite business and to divide the profits and losses of that business, and by its terms measures up to the definition of a partnership as declared by section 2395 of the Civil Code.

ID.—SUFFICIENCY OF EVIDENCE.—Where, in addition to the evidence of the contract, there is the evidence of the conduct of the parties, and particularly that of the defendant corporation, which, through its officers and agents, visited the orchards bearing the fruit which the other party proposed to buy, and in effect represented to the owners, that the fruit, if bought, would be bought upon the joint account of the two parties, the evidence is sufficient to sustain the findings as to the liability of the defendant corporation as well as the other party.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Collier & Clark, for Appellant.

Langley & Thomas, and Scarborough & Forgy, for Respondent.

HENSHAW, J.—Plaintiff on his own behalf and as assignee of thirty-one other fruit growers brought this action to recover sums of money asserted to be owing from defendants for oranges and lemons, in some instances sold to defendants,

in other instances consigned to them for sale. Plaintiff recovered judgment and the defendant Peycke Company appeals, the principal ground of appeal being that the findings are not supported by the evidence.

The defendants entered into a written contract with each other, a copy of which here follows:

"Mr. E. L. GILMAN,

Orange, Calif.                                        May 22, 1909.

Referring to our conversation of a few days ago we now confirm that we will do a joint account business with you on equal division of profits and losses. The business is to be the shipping of oranges and lemons which you are to secure without any expense to the joint account, on consignment, or if any purchases are made, it shall only be done with our consent, in each and every instance when the amount of purchase exceeds one hundred dollars. You are to furnish the packing house and are entitled to $5.00 per car for each car packed. We will furnish the funds required to handle the business and do the selling free of expense to the joint account. All legitimate packing house expenses are to be charged against the joint account.

Yours truly,

EDMUND PEYCKE COMPANY.

The above is accepted by me.

E. L. GILMAN."

The defendant Peycke Company faithfully carried out the terms of its agreement. Gilman secured the fruit, either on consignment or by purchase, with the approval of the Peycke Company, Peycke Company disposing of the fruit, advancing moneys to Gilman when demanded for the payment of the fruit and for the attendant expenses of packing it. Gilman, however, being financially involved, did not use these moneys for the payment of the individual fruit men, and when the condition of his affairs forced him into insolvency, a number of them, the assignors of plaintiff herein, were unpaid. The Edmund Peycke Company balanced its account with Gilman, and there being due to him the sum of two thousand seven hundred and fifty dollars profits growing out of their transactions, this sum was deposited by the Peycke Company in a bank in Los Angeles in settlement of the account, the money to wait distribution under the proceedings in the matter of Gilman's insolvency. The dissatisfied fruit growers sought

and secured a recovery against these defendants growing out of their asserted joint liability by virtue of the contract above set forth and by virtue of their conduct and actions under the contract. The soundness of the judgment against Gilman is, of course, unquestioned. The liability of the Peycke Company, by virtue of its arrangements and transactions with Gilman is the question presented upon this appeal.

Appellant's first argument is that no partnership is shown to have existed between Gilman and the Peycke Company. Following that it argues that Gilman was not such an agent of the Peycke Company as to render the Peycke Company liable for Gilman's obligations.

Upon the subject of the existence or nonexistence of a partnership, it is to be borne in mind that we are called upon to consider the contract of these defendants and their dealings with each other and with the world as that contract and those dealings affect the rights of third parties who have maintained business relations with them. At the outset appellant places altogether too narrow an interpretation upon the nature of the business agreed to be done by and between the defendants. It is said that that business was limited specifically to the mere *shipping* of oranges; that the profits and losses were to be based upon the profits and losses arising from a mere shipping, and as it is not shown that any liability arose to third persons or any loss occurred to third parties by virtue of this mere shipping, so appellant is not liable. But such a straightened construction does manifest violence to the expressed intent of the defendants. Their joint business relations involved shipping as a mere incident. True, to obtain profitable markets for the oranges and lemons the shipping was a necessary incident, but it was nothing more than an incident to the main business. The agreement between the defendants amounted clearly to this: Gilman was to devote his time and services to securing fruit which would be marketed by the Peycke Company. For such fruit as he secured "on consignment" there would in the usual course of business be the commissioner's percentage upon the returns of the sale. This was one kind of business in which the defendants were to jointly engage. Gilman was also to purchase oranges and lemons upon the joint account of the defendants, but only (when the value of the purchase exceeded one hundred dollars) upon the approval by the Peycke Com-

pany of the price. This was a most natural and wise provision in the contract, since the Peycke Company, being shippers and handlers of this fruit, would the better know the market price at eastern and other points, and thus be the better able to tell whether any considerable amount of fruit at a given price could be profitably disposed of. A third term of the contract was that Gilman was to provide for the packing of the fruit and the placing it upon the cars, being entitled to charge the joint venture five dollars for each car thus packed for the joint account. In addition, all other legitimate packing house expenses were to be charged to this joint account, and the Peycke Company was to furnish all the moneys necessary for these transactions. Gilman was to make no charge for his time and services in the matter, and, upon the other hand, the Peycke Company was to make no charge for its time and services in thus marketing the fruit. Such is the fair intendment of this contract, and it needs no argument to show that it goes far beyond the mere shipping of oranges.

Appellant next asserts that there is no mutuality of agency in the contract and relationship of these parties and that such mutuality of agency is essential to the partnership. Of course, it is elementary that each partner has authority to represent and bind the copartnership within the scope of the partnership business. (*Smith* v. *Schultze,* 89 Cal. 534, [26 Pac. 1087] ; *San Diego Water Co.* v. *San Diego Flume Co.,* 108 Cal. 562, [29 L. R. A. 839, 41 Pac. 495].) But the facts that Gilman was the fruit buyer for the joint venture and that the Peycke Company reserved the right to veto prospective purchases if the price was not satisfactory to it (these being the considerations which appellant advances in support of the proposition that there is no mutuality of agency) are far from determinative of the question. In this aspect the case is that presented in *Clark* v. *Gridley,* 49 Cal. 105. This court had no difficulty in declaring a partnership to exist where one of the parties to it was to buy wool in Marysville and ship the wool to the copartners in San Francisco, drawing drafts upon them for the payment of the wool, the profits and losses to be shared equally. The additional circumstance present in this case and nonexistent in the other, that one of the partners reserved the right of approval touching the price of prospective purchases, did not in any material sense affect

the relationship, certainly so far as concerns third persons. As between the partners themselves, an unwarranted purchase by the one would of course be open to rejection by the non-assenting partner. But no question of this kind, nor of the rights of partners, nor of third persons dealing with the partnership because of such unwarranted purchase, is here involved. It is not disputed but that all the purchases and consignments here made for which payment is sought were with the actual approval of all the defendants.

The nonexistence of a partnership in this case, it is further declared, rests upon the fact that there was "no community of interest in procuring the fruit." This can only mean that because Gilman was to devote his services to the procuring of it, precisely as the Peycke Company was to devote its services to the handling and sale of it, each without charge, no partnership existed. But so untenable is this position that it needs only the statement of it for its refutation.

Appellant last contends that there may be a division of profits as a basis of fixing compensation, apart from and independent of a partnership. This, of course, is perfectly true. A division of the profits amongst employees is not an unusual thing in modern business. The employees received a fixed compensation by way of wages or salary, and in addition thereto and as an inducement to more efficient service, are given a certain percentage of the net profits at stated intervals. This, of course, does not create a partnership. No more is a partnership created in that other large class of cases where leases of various kinds are made, the compensation to the lessor being based upon the profits which the lessee may derive from his holding. But while thus the element of profit-sharing does not alone and of itself establish a partnership, it is an essential element of every partnership, and it is an element present in this contract. In truth, the existence or nonexistence of a partnership in any case cannot be determined by the method appellant adopts, of dissecting the whole relationship into broken parts and members, and studying each disjointed fragment as though it were the complete whole. A partnership, especially where, as here, the rights of third parties are involved, is to be determined by the contract, taken with the conduct and the dealings with the world of those who are the parties to it. If that contract and if those dealings, so far as the world is concerned, measure up

to the partnership relation, with the joint duties and liabilities attaching thereto, then, so far as third persons are concerned, who have had dealings with them, the defendants are partners. Again we repeat that the all-important difference in construing partnership and relationships of this kind as between the parties themselves upon the one hand, and as between the parties themselves and those who have dealt with them upon the other hand, is this: That as between the parties themselves, when the rights of no third persons are involved, the question is one of determination merely upon the letter of the contract and the conduct of the contracting parties to each other under it. When, however, the rights of third parties are involved, the basis of the inquiry shifts materially, and the fundamental questions are, what had those third parties the right to believe from the language of the contract and from the conduct of the parties to it as affecting them, and not as affecting each other. Each case, therefore, is adjudicated upon its own facts, and very little value will be found from any extended review of the authorities.

The contract in evidence in this case leaves little doubt but that the relationship between these defendants was that of a limited partnership or joint venture. Of course a partnership may be organized for the prosecution of one or two adventures, as well as for the conduct of a general and continuous business. It is not of the essence of a partnership that the parties to it should have known that their contract in law created a partnership. ( *Chaplain* v. *Hughes,* 104 Cal. 302, [37 Pac. 1048, 38 Pac. 109]; *Hunter* v. *Martin,* 57 Cal. 365.) If by contract or by conduct or by both they have in point of law engaged in a partnership venture, so far as third persons are concerned they cannot be heard to deny the relationship and the liabilities arising therefrom. It is plain from the very terms of the agreement between these defendants that it measures up to the definition of a partnership as declared by section 2395 of the Civil Code. It was an association of two persons to carry on a definite business and to divide the profits and losses of that business. (*Hendy* v. *March,* 75 Cal. 566, [17 Pac. 702]; *Quinn* v. *Quinn,* 81 Cal. 14, [22 Pac. 264]; *Chapin* v. *Brown,* 101 Cal. 500, [35 Pac. 1051]; *Sullivan* v. *Sullivan,* 122 Wis. 326, [99 N. W. 1022].)

In addition to the evidence of the contract there is the evidence of the conduct of the parties, and particularly of

the defendant corporation, which, through its officers and agents, visited the orchards bearing the fruit which Gilman proposed to buy, and in effect represented to the owners, as was of course the fact, that the fruit, if bought, would be bought upon the joint account of Gilman and the Peycke Company.

We have treated the subject generally since appellant's specific objections to the insufficiency of the evidence to sustain the findings have reference only to the liability of the Peycke Company, it being admitted, or stipulated, as has been said, that the fruit so purchased by Gilman was not paid for. The evidence sustains the findings.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.