[Civ. No. 10901.   Second Appellate District, Division One.—October 15, 1936.]

ASSOCIATED PIPING AND ENGINEERING CO., LTD. (a Corporation), Respondent, v. C. E. JONES et al., Defendants; A. E. AUSTIN, Appellant.

Samuel J. Crawford for Appellant.

Francis B. Cobb for Respondent.

WHITE, J., *pro tem.*—The plaintiff brought this action against C. E. Jones, George A. Mott and A. E. Austin, individually and as copartners doing business under the firm name of J & M Manufacturing Company, to recover a balance due for merchandise sold and delivered, money advanced to, and services performed for defendants. From a judgment rendered in favor of the plaintiff, defendant A. E. Austin appeals.

On the 12th day of December, 1934, the defendants entered into an agreement which reads as follows:

"THIS AGREEMENT made and entered into this 12th day of December, 1934, by and between Aubrey E. Austin of Santa Monica, California, hereinafter referred to as party of the first part, and George A. Mott and Charles C. Jones, both of Santa Monica, California, hereinafter referred to as parties of the second part.

"WITNESSETH:

"WHEREAS, heretofore, to-wit, on or about the 7th day of November, 1934, the said parties of the second part did apply through Victor J. Evans & Company, patent attorneys of Washington, D. C., and of San Francisco, California, for letters patent on a certain device known as the J. M. Extractor, being application #757027 United States Patent Office, which said device is used for the purpose of extracting solvent from dry cleaners muck.

"WHEREAS, it is the desire of parties of the second part to procure financial assistance from party of the first part for the purpose of exploiting and promoting the manufacture and sale of said J. M. Extractor, and also of territorial rights for the promotion and sale of said extractor when and if rights patent have been issued.

"IT IS NOW, THEREFORE, AGREED:

"Party of the first part agrees to loan to parties of the second part, from time to time, various sums of money, which said sums shall not exceed a total of Ten Thousand Dollars ($10,000.00).

"IN CONSIDERATION of all the singular the above, parties of the second part do hereby transfer, assign, set over and sell to party of the first part a one-third (⅓) interest in and to any and all contracts, profits and/or benefits derived from the exploitation and/or sale of said J. M. Extractor, or from the sale of any territorial rights

appertaining thereto, including the one-third (⅓) interest in and to any and all patent rights now pending in the United States Patent Office, as well as in and to all rights to any improvement thereon hereafter obtained.

"IT IS FURTHER AGREED by and between the parties hereto that, as advances of funds are made, parties of the second part will, at the option of the party of the first part, secure the same by either promissory notes executed by parties of the second part or by the deposit with party of the first part of contracts for the sale of J. M. Extractors, it being understood that any and all funds and/or receipts derived from the sale of said J. M. Extractor, or from the sale of territorial rights appertaining thereto shall be collected by party of the first part, and the said party of the first part shall have the right to retain any and all funds collected on said contracts and to apply the same in repayment of any sums theretofore advanced.

"IT IS FURTHER UNDERSTOOD AND AGREED that parties of the second part shall retain full control of the management and operation of said business, subject, however, to the rights of the party of the first part, as hereinabove set forth, it being understood and agreed that it is the desire of all parties hereto to exploit and promote the sale and distribution of said J. M. Extractor, and to this end all parties agree to lend their best efforts, it being understood, however, that party of the first part shall not be required to render service other than as herein set forth.

"THIS AGREEMENT shall be binding upon the successors, heirs, executors, administrators and assigns of the respective parties hereto.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written.

> "AUBREY E. AUSTIN
> "Party of the First Part
> "GEORGE A. MOTT
> "CHARLES C. JONES
> "Parties of the Second Part."

On and before December, 1934, the J & M Manufacturing Company was engaged in selling and installing a device known as the J. M. Extractor, which device cleaned fluids used by dry cleaning establishments. Prior to December, 1934, the plaintiff, Associated Piping and Engi-

neering Co., Ltd., manufactured and installed some of these devices for the J & M Manufacturing Company, but required that the articles be delivered direct to the place of installation, thus preserving to plaintiff its lien rights in the event of nonpayment. Plaintiff contends that subsequent to December, 1934, after being informed of the arrangement between the appellant, Austin, and J & M Manufacturing Company, and being advised by defendant Mott that appellant Austin had acquired a one-third interest in the business of J & M Manufacturing Company, and that Austin was a man of financial worth and was to put up as much money as was needed to promote the J & M Manufacturing Company business, that the arrangement between plaintiff and J & M Manufacturing Company was changed so that the merchandise was delivered direct to the place of business of the J & M Manufacturing Company, under which plan plaintiff lost any recourse to its lien rights thereon.

Appellant urges a reversal of the judgment mainly upon the ground that the finding of the court that he was a partner by virtue of the foregoing contract is without support in the evidence, and that the contract here in question establishes the relationship of debtor and creditor, and nothing further.

We are of the opinion that, notwithstanding the provisions of the contract under which appellant "agrees to loan to the parties of the second part, from time to time, various sums of money", he was in fact a member of the partnership. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." (Sec. 2400, Civ. Code.) We may concede that a relationship of debtor and creditor is shown, and also that the contract expressly declares that appellant "agrees to loan" various sums of money to the other parties. However, this does not establish the fact that the parties did not intend to create a partnership between themselves or as to a third person. The parties did intend to create exactly the relationship as shown `by the contract, but did not intend that relationship to be called that of partnership. However, their intention in this respect is immaterial (*San Joaquin L. & P. Corp.* v. *Costaloupes*, 96 Cal. App, 322, 332 [274 Pac. 84]); and if the contract by its terms establishes a partnership between the parties, even the expressed

intent that it should not be so classed would be of no avail. It is the intent to do the things which constitute a partnership that usually determines whether or not that relation exists between the parties. (*Chapman* v. *Hughes*, 104 Cal. 302 [37 Pac. 1048, 38 Pac. 109].) The provision in the contract that Mott and Jones "shall retain full control of the management and operation of said business, subject, however, to the rights of the party of the first part," (appellant herein) does not prevent a partnership, because the fact that by agreement between the parties one or more of them is given the management of the partnership enterprise does not prevent a partnership from arising. (*Westcott* v. *Gilman*, 170 Cal. 562, 567 [150 Pac. 777, Ann. Cas. 1916E, 437].) A partnership, especially where, as here, the rights of third persons are involved is to be determined by the contract, taken with the conduct and dealings with the world of those who are parties to it. If that contract, and if those dealings, so far as the world is concerned, measure up to the partnership relation, with the joint duties and liabilities attaching thereto, then, so far as third parties are concerned who have had dealings with them, they are partners. (*Westcott* v. *Gilman, supra,* p. 568.)

As between the parties themselves, when the rights of no third persons are involved, the question is one of determination merely upon the letter of the contract and the conduct of the contracting parties to each other under it. When, however, the rights of third parties are involved, the basis of the inquiry shifts materially, and the fundamental question is: What had those parties the right to believe from the language of the contract and from the conduct of the parties to it as affecting them, and not as affecting each other? Each case, therefore, is adjudicated upon its own facts, and very little value will be found from any extended review of the authorities. That is precisely the case at bar, the question being as to whether appellant permitted himself to be represented as a partner and the reliance by third parties upon such representation. There is ample evidence in the record that respondent extended further credit to the J & M Manufacturing Company in view of the fact that appellant Austin was identified with the business. Representatives of respondent so testified. This being so, the only question remaining is whether or not the acts and

conduct of appellant Austin were sufficient to lead respondent to believe he was a copartner and assumed responsibility as such. This was a question of fact, to be determined by the trial court upon the hearing; and in our opinion the findings of the trial court are amply supported by the evidence, which shows that appellant Austin was to be repaid for his advances out of the first moneys coming in from all contracts, which constituted the only returns to the business enterprise. He had the right to make collections and had the option to apply all of the money collected in repayment of his advances, or to permit all or any part of it to be used in the conduct of the business. In addition to the foregoing, Fred G. Humiston, president of the respondent corporation, testified that his company had been dealing with Mott and Jones for some time before appellant came into the picture. Humiston knew, he said, that they had little capital, and he took precautions to protect his corporation by requiring advancements covering the cost of material and requiring further payment at the time of delivery of the extractors at the place of installation. After being informed by either Mott or Jones that they had secured financial backing, and that Austin was a partner in the enterprise, the respondent extended almost unlimited credit. Mr. Humiston further testified that he had a conversation with appellant Austin relative to a check given by Mott which had been returned by the bank unpaid. He called appellant by telephone, and the latter said to put the check through the bank again and "he would take care of it". Again, when payments fell behind, Mr. Humiston called appellant by telephone and asked for $1500 on account, to which the latter said, "We will give you a thousand," and this was done. In a later conversation, Humiston talked with Austin about payment, in connection with which Humiston testified: "I told him . . . we were personally willing to not press them too hard for the account if it was handled all right and if he was going to continue to put up some money. . . . He said that that was all right with him, he was glad to see the stand we were taking, and he thought it just a question of time before it worked out and the business went over." This course of conduct, to our mind, indicates that the status of appellant Austin in the business was not that of a money lender; and also, in our opinion, establishes the fact that

Austin was aware that respondent was continuing to manufacture and deliver equipment on credit due to a belief in appellant's financial integrity. It might also here be noted that during the time of these conversations appellant Austin would personally benefit from the manufacture and delivery of equipment by respondent on credit, to the detriment of the latter. We are satisfied that the conduct of appellant clearly brings him within the provisions of section 2410 of the Civil Code, defining a partner by estoppel. As was said in *San Joaquin L. & P. Corp.* v. *Costaloupes, supra,* at page 334: "The courts will not countenance contrivances for giving persons the whole of the advantage of a partnership, without subjecting them to the liabilities, and an agreement which attempts to carry out a joint venture for the mutual profit of the adventurers and evade their responsibility for losses may be enforced and construed as creating a partnership. (20 R. C. L. 833, and cases cited; 18 L. R. A. [N. S.] 1084.)" In our opinion, both the contract and the conduct of appellant indicates both ownership and joint liability, as well as a purpose to jointly carry on the business.

The decision above indicated on the questions stated is sufficient to dispose of the case; and the other questions presented need not be considered.

The judgment is affirmed.

Doran, J., concurred.

Houser, P. J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 11, 1936.