**KAUFMAN–BROWN POTATO CO. et al. v. LONG et al.**

No. 12390.

United States Court of Appeals
Ninth Circuit.
May 11, 1950.

———————◆———————

Samuel C. Colby, Kyle Z. Grainger, Los Angeles, Cal., for appellant.

Johnston, Baker & Palmer, Bakersfield, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The individuals, Charles H. Kaufman and Albert H. Brown, doing business as Kaufman-Brown Potato Company, a partnership, joined with two others in a petition filed in federal district court alleging that they were creditors of Gerry Horton and J. D. Althouse, individually, and creditors of them doing business as Gerry Horton Company, a partnership, and Gerry Horton and J. D. Althouse doing business as Gerry Horton Farms, a partnership. The petition contained appropriate allegations upon which bankruptcy adjudication. was pronounced against both Horton and Althouse and against the two partnerships of which they were members. No petition for review of such adjudication has ever been filed nor has the adjudication been vacated although it was ordered amended by adding to those declared bankrupt.

At this point it is well to state that unless the text indicates otherwise, wherever we mention a partnership by name we include its membership and wherever we mention the membership of a partnership we include the partnership.

As will later herein appear, the referee and the district court in response to a petition of the trustee in bankruptcy subsequently made an order declaring among other things, that there was a second partnership by the name of Gerry Horton Farms which was composed of the first mentioned partnership of the same name and the partnership of Kaufman-Brown Potato Company. This second "Gerry Horton Farms" is distinguished by the bankruptcy court by adding after the name "engaged in raising potatoes". We shall designate it "Gerry Horton Farms (partnership combination)." By the amended order "Gerry Horton Farms (partnership combination)" as a distinct and separate enterprise is added to those adjudged bankrupt in the original adjudication. It will be necessary to an understanding of the problems presented and to their solution to keep in mind the fact that although the individuals Gerry Horton and J. D. Althouse and the two partnerships comprised of them alone are declared bankrupt, the individuals Charles H. Kaufman and Albert H. Brown and the partnership Kaufman-Brown Potato Company are not so declared. We quote the amended adjudication in the margin.[1] It may be said in

---

1. "2. That Gerry Horton Company, a copartnership composed of Gerry Horton and J. D. Althouse; Gerry Horton Farms, the partnership not engaged in the raising of potatoes composed of Gerry Horton and J. D. Althouse; Gerry Horton Farms, a partnership engaged in the raising of potatoes composed of Kaufman-Brown Potato Company, a copartnership consisting of Charles H. Kaufman and Albert H. Brown, and Gerry Horton Farms, a copartnership consisting of Gerry Horton and J. D. Althouse; Gerry Horton, an individual; and J. D. Althouse, an in-

passing that the trustee's petition which called forth the amendments did not request that additional bankrupts be included in the order of adjudication but did call attention to the contracts hereinafter to be analyzed and to their questioned effect upon the bankruptcy proceedings. The amended adjudication is the subject of two of three appeals, all of which have been consolidated and are here for decision, one of them being an appeal from the court's minute order, the other from the court's formal written order.

Separate proceedings were had as to the allowability of Kaufman-Brown Potato Company's unsecured claim, as set up in the original petition and as to which form of proof was later filed, and such claim was ordered allowed in part as against Gerry Horton Company, and wholly disallowed as against Gerry Horton Farms, the partnership comprised of Horton and Althouse only. As against Gerry Horton Farms (partnership combination), such claim was allowed but payment thereon was deferred until after all other creditors' and all administration expenses had been paid. The order as to such claim is the subject of one of the consolidated appeals. Charles H. Kaufman, Albert H. Brown, and Kaufman-Brown Potato Company are the appellants in all three appeals.

It is contended by appellants that the contracts by and between Gerry Horton Farms, a partnership composed of Gerry Horton and J. D. Althouse, and Kaufman-Brown Potato Company a partnership composed of Charles H. Kaufman and Albert H. Brown, are not partnership agreements and did not constitute a partnership of such partnerships and that no conduct of any persons brought such status to functioning under them; that even if they are wrong in the contention that a partnership was not created by the contracts and conduct and the agreements between the partnerships did create another partnership, it was not within the power of the court, in the circumstances, to adjudge such partnership bankrupt. Appellants also contend that the disposition of their claim against the bankrupts was erroneous.

### The Partnership Issue

Applicable local or California state law was applied to the facts in the consideration of this issue,[2] and when this is done we must hold to the referee's and the court's conclusions unless they are without substantial support or, though they are substantially supported, we find upon a review of the whole case that clearly a mistake has been made. Rules 52(a) and 53 (e) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; Diamond Laundry Corp. v. California Employment Stabilization Commission, 9 Cir., 1947, 162 F.2d 398. Compare United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L.Ed. 746. In our consideration of the written contract in the bankruptcy issue we must take into account the fact that part of the evidence is in writing and part is oral testimony before the referee and the trial court. See our latest expression on the point, with authorities, Smyth v. Barneson, 9 Cir., 181 F.2d 143.

Appellants rely mainly upon these arguments: The dealings between Gerry Horton, J. D. Althouse, Charles H. Kaufman, and Albert H. Brown could not constitute [as is claimed they must under California law to constitute a partnership] an association for the purpose of *jointly* carrying on a business together. The word "partner" used twice in each of the written agreements was inadvertent and is not conclusive. The written contracts or agreements themselves in certain particulars and the

---

dividual, is each a bankrupt under the Act of Congress relating to bankruptcy, 11 U.S.C.A. § 1 et seq., and each is hereby declared and adjudged a bankrupt accordingly."

2. Although the strict place of contracting appears to have been Illinois, performance was to occur in California. It was in California that the creditor rights arose. A rigid adherence to the place of contracting test as to what law governs is, we think, obnoxious where as here the more important contacts are with California. In any event, applicable Illinois law is no different. The Uniform Partnership Act has also been adopted there. See Smith-Hurd Ann.St. of Ill. (1917), c. 106½, §§ 1-43.

598

conduct of the parties under such written agreements negative both any intent to form a partnership or that a partnership in fact was formed or existed.

It appears from the evidence that Horton and Althouse, prior to any association with Kaufman-Brown Potato Company, were doing business in partnership both as Gerry Horton Company and Gerry Horton Farms, under the former name as farm produce distributors and under the latter name as producers. In 1944 they held two parcels of California farm land under lease. As to each parcel separately Horton and Althouse as Gerry Horton Farms contracted in writing with Kaufman and Brown doing business as Kaufman-Brown Potato Company, who were distributors, relative to planting, raising, and harvesting potatoes on such land.

It was agreed in each contract that Kaufman and Brown would purchase from Horton and Althouse for a certain amount an undivided interest [50% as to one parcel; 40% as to the other parcel] in all potato crops to be planted, raised and harvested upon such leased land during the year 1944. Horton and Althouse agreed to pay all costs and expenses of planting and raising in excess of the amount above mentioned to be paid in by Kaufman and Brown for the above undivided interests. The costs incurred for harvesting were to be shared in the ratio of such interests. The net proceeds after repayment to Kaufman and Brown of the amount they paid in and of any amounts paid by Horton and Althouse in addition thereto ·for the expenses of planting and raising were to be divided "between the partners" [quoting from such contracts] in like manner. The over-all losses sustained in the venture were to be borne by the parties in their interest ratio. It was also provided that Horton' and Althouse would keep full and accurate accounts of the enterprise at their place of business. The written contracts provided for an option to Kaufman and Brown Potato Company to purchase the crop raised and harvested on each parcel of land for a price equal to the prevailing market price but if there were no prevailing market price upon harvest Kaufman and Brown

agreed to handle all the potatoes as agents for Horton and Althouse for a stated commission "for said services rendered on behalf of the partners hereto" and pay to Horton and Althouse all money received from the sale thereof "subject to accounting and distribution as hereinbefore set forth." [Quotations are from each contract.] In the event that Kaufman and Brown exercised their option to purchase, Horton and Althouse could add to the purchase price any markups allowed by O.P.A. regulations but that the total amount of such markups would be divided between the parties in the ratio of their interests. Horton and Althouse were to furnish all the necessary farming equipment. The contracts also provided for the execution of a crop mortgage as security for faithful performance by Horton and Althouse and for a promissory note also to be executed in an amount which as above mentioned Kaufman and Brown were to pay in. After each contract had been fully complied with, the mortgage and note were to be surrendered and cancelled. It was declared that the mortgage and note were executed solely as security for performance and that Horton and Althouse were not to be held liable for any losses resulting from causes beyond their control. The contracts did not provide for a firm bank account nor for a firm name of the business to be conducted under the provisions of the contracts. Both agreements were prepared by Horton and Althouse's attorney pursuant to Horton's instructions.

As to their farming activities, during the year 1944 Horton and Althouse devoted themselves solely to operations under and in conformity with the written agreements. Potatoes were farmed, harvested and sold and Kaufman-Brown Potato Company, exercising its option, purchased some and paid to Horton and Althouse the prevailing market price therefor. In the aggregate [as to both leases] Kaufman and Brown in fact advanced to Horton and Althouse some $43,000 and had been repaid $20,000. The latter had issued bank checks for the balance of such advances not repaid but they were not honored for lack of sufficient funds. The total of such dishonored

checks represents the amount of the claim asserted by Kaufman and Brown in the instant involuntary petition in bankruptcy.[3] It was testified that such checks were accepted in payment of the mortgages and notes executed by Horton and Althouse pursuant to each contract. Appellants assert their claim here as unsecured.

No assignments of the leases held by Horton and Althouse were ever made to the purported partnership with Kaufman-Brown Potato Company. No bank account was maintained separate from those kept in the names of each of the partnerships of which Horton and Althouse were the sole members. There was no evidence that any of the creditors of the 1944 farming enterprise were told or knew that Kaufman-Brown Potato Company was a partner in the farming of the leased ground or that any of them knew anything about Kaufman-Brown's association or interest.

Section 2400 of the California Civil Code [now § 15006 of the California Corporations Code] defines a partnership in the language of the Uniform Partnership Act as an "association of two or more persons to carry on as co-owners a business for profit." Rules for determining the existence of a partnership are stated in section 2401 of the California Civil Code [now section 15007 of the California Corporations Code].[4]

A partnership may be formed for a single venture. Westcott v. Gilman, 1915, 170 Cal. 562, 150 P. 777, Ann.Cas.1916E, 437; Stenian v. Tashjian, 1918, 178 Cal. 623, 174 P. 883; Gray v. Janss Invest. Co., 1921, 186 Cal. 634, 200 P. 401. Whether or not a partnership relationship exists is determinable by the intent of the parties to do things which constitute a partnership. Chapman v. Hughes, 1894, 104 Cal. 302, 37 P. 1048, 38 P. 109; Associated Piping & Engineering Co. Ltd. v. Jones, 1936, 17 Cal.App.2d 107, 61 P.2d 536; California Employment Stabilization Commission v. Walters, 1944, 64 Cal.App.2d 554, 149 P.2d 17. It is immaterial that the parties deign not to call their relationship, or believe it not to be, a partnership, especially where as here the rights of third persons are involved. It is true that a mere agreement to share profits and losses does not make a partnership but both the sharing of profits and losses are usual in partnership agreements and practices.

It is plain that the contracts in question were drawn with some of the usual covenants and conditions both of a straight financing contract with options and of a partnership agreement. Appellants point especially to the provisions for crop mortgages as supporting the former relation but their argument is offset by the proviso that such were to be security only for per-

---

3. Some $800 of such claim is asserted only against Gerry Horton Company, and appellee-trustee concedes such company's liability as debtor. These appeals do not concern in any way such debt or Gerry Horton Company.

4. California Civil Code section 2401 [California Corporations Code section 15007] reads as follows:

"In determining whether a partnership exists, these rules shall apply:

"(1) Except as provided by Section (2410) persons who are not partners as to each other are not partners as to third persons.

"(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

"(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a debt by installments or otherwise.

"(b) As wages of an employee or rent to a landlord.

"(c) As an annuity to a widow or representative of a deceased partner.

"(d) As interest on a loan, though the amount of payment vary with the profits of the business.

"(e) As the consideration for the sale of a goodwill of a business or other property by installments or otherwise."

formance on the part of Horton and Althouse and that Horton and Althouse would not be liable for any losses occasioned by causes beyond their control. The non-mention of capital contribution of each of the parties is stressed, but all partners need not contribute capital in the strict sense of the word; some may invest their labor and skill. See Gray v. Palmer, 1858, 9 Cal. 616, 638. These contracts provide that Kaufman and Brown were to put up so much money for initial expense but note that all of it was to be returned out of the product as expense before division of sales returns. Horton and Althouse were to devote themselves to the farming aspect using their own equipment, and Kaufman and Brown were to use their sales organization and experience if necessary to effect distribution of the crop. However, the provision that the amounts paid in by Kaufman and Brown were to be repaid before division of sales returns is consistent with a partnership relationship. See California Civil Code section 2412(a) (California Corporations Code section 15018(a)).[5] There is a provision in each of the contracts that in certain circumstances Kaufman and Brown would act as agents for Horton and Althouse to dispose of the potatoes upon harvest through Chicago markets for a stated commission and would pay to Horton and Althouse money obtained from sales. This provision appears to be more unusual in a partnership contract than inconsistent with one, for Horton and Althouse were to keep the accounts and all such provisions were stated to be "subject to accounting and distribution as hereinbefore set forth." The use of the word "partner" in each agreement could have been but a handy word to include personnel without naming them but the fact-finder, on analyzing the complicated contracts, would not be justified in rejecting its possible bearing on the

issue entirely. The contracts also provide that Horton and Althouse keep the "books of account and all other records" of the enterprise at their place of business and that each of the partners hereto "shall at all times have access to and may inspect and copy any of them." The latter quoted language is taken verbatim from California Civil Code section 2413 [California Corporations Code section 15019], which relates to "partnership books".

It is evident that Kaufman and Brown advanced more than was required by the contracts. This fact could be accounted for by their desire to protect their interests in either relation. Further, there is testimony to the effect that both Messrs. Kaufman and Brown came to California and made recommendations relative to operations under the contracts. Of course, their interest in the contracts could have justified their personal presence on the ground, either as partners or joint venturers, but it is consistent with partnership interest.

■ We are of the opinion that the record contains the essentials of a partnership and also substantial proof that such was the intention at least of Horton and Althouse, the authors of the contracts. Upon a review of the record as a whole we do not find that a mistake has been made. Compare Westcott v. Gilman, supra; Associated Piping & Engineering Co. Ltd. v. Jones, supra.

Did the court have the power in the circumstances to declare Kaufman-Brown Potato Company or its personnel a member or members of a partnership which had not theretofore been mentioned in the proceedings and to adjudge such partnership bankrupt?

■ We have already said that the involuntary petition in bankruptcy is against, among others, Gerry Horton Farms, a

---

5. California Civil Code section 2412 [California Corporations Code section 15018] reads in part as follows:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

"(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits. * * *"

partnership composed of Gerry Horton and J. D. Althouse only, and not against a partnership of the same name or with an assumed firm name (Gerry Horton Farms (Partnership combination) ), as to which Kaufman-Brown Potato Company, a partnership itself, was among the membership.[6] It is undisputed that Gerry Horton and J. D. Althouse have done business as a partnership under the firm name of Gerry Horton Farms and that such relationship existed before and in 1944, and that as such partners and partnership Horton and Althouse entered upon the contracts above discussed.

The petition of appellee-trustee in bankruptcy, the initial step in the proceedings now before us, asked simply that an order to show cause issue as to "why an order should not be made and entered herein ordering, adjudging and decreeing that each of them [Kaufman, Brown and Kaufman Brown Potato Company] is a general partner of Gerry Horton Farms, one of the above entitled bankrupts, and why a further order should not be made and entered herein amending, modifying and changing the order of adjudication herein in conformity to the foregoing * * *."

The referee's order, with unimportant changes in the text, was approved by the court and, as we have said, amended the order of adjudication so that not only were the four previously adjudicated bankrupts declared bankrupt but in addition a different business enterprise was adjudged bankrupt, namely, the partnership of which Kaufman, Brown and Kaufman-Brown Potato Company, and Horton, Althouse and Gerry Horton Farms each were found to be a general partner. It appears that such ruling was based upon findings of fact to the effect that Kaufman-Brown Potato Company misrepresented in these proceedings that its claim lay against a partnership composed solely of Horton and Althouse when it knew the contrary to be true. By reason of such conduct and joinder here as a petitioning creditor, appellants were deemed to have consented to the adjudication of such partnership.

The net result is that a partnership not named in the involuntary petition was adjudged an involuntary bankrupt which of course was beyond the legal power of the court.

First, there is no authorization to be found in the Bankruptcy Act for the involuntary adjudication as bankrupt of a partnership save upon the petition of qualified creditors. Compare 11 U.S.C.A. §§ 95, sub. b and 23, sub. b. The petition of the trustee in bankruptcy [if we assume he represents a partner] was obviously not filed "in behalf of a [combination] partnership" [quoting from 11 U.S.C.A. § 23, sub. b] because as already indicated the trustee asked that Kaufman, Brown, and Kaufman-Brown Potato Company be decreed to be each a partner in the bankrupt business organization known as the Gerry Horton Farms partnership [not the combination].

Second, the acts of bankruptcy charged in the involuntary petition involved insolvency. See 11 U.S.C.A. §§ 21, sub. a(2) and (3). Evidence, forthcoming on cross-examination of Kaufman by appellee's counsel, as to the solvency of Kaufman-Brown Potato Company went uncontroverted. A partnership, in the bankruptcy sense, is not insolvent unless the total of its assets combined with the assets of its individual members available for

---

**6.** It should be noted that the adjudication as bankrupt of Gerry Horton Company, Gerry Horton Farms, Gerry Horton and J. D. Althouse, upon such involuntary petition, is in no way before us. The trustee's petition is not in the nature of a motion to vacate the adjudication, and such adjudication being a judgment in rem stands, despite apparent defects in the pleading of "jurisdictional facts." Compare Vallely v. Northern Fire & Marine Ins. Co., 1920, 254 U.S. 348, 41

S.Ct. 116, 65 L.Ed. 297; In re Taylor, 7 Cir., 1900, 102 F. 728; C. C. Taft Co. v. Century Savings Bank, 8 Cir., 1905, 141 F. 369; Edelstein v. United States, 8 Cir., 1906, 149 F. 636; In re New York Tunnel Co., 2 Cir., 1908, 166 F. 284; Larkin-Green Logging Co. v. Sabin, 9 Cir., 1915, 222 F. 814; In re De Lue, 1 Cir., 1924, 295 F. 130; Collier on Bankruptcy (14th ed.), § 18.08; Official Form No. 5, 11 U.S.C.A. following section 53.

partnership debts does not exceed partnership debts. See 11 U.S.C.A. §§ 1(19) and 107, sub. d(1); .Tom v. Sampsell, 9 Cir., 1942, 131 F.2d 779. More loosely stated, a partnership is not insolvent so. long as any of its members are individually solvent. See Mason v. Mitchell, 9 Cir., 1943, 135 F.2d 599. There is no evidence in the case to the effect that Kaufman-Brown Potato Company is bankrupt; indeed what evidence there is bearing upon that subject tends to show such firm perfectly solvent. Upon this record, therefore, the partnership (Gerry Horton Farms (combination partnership) created by the written agreements between Kaufman-Brown Potato Company and Gerry Horton Farms could not be adjudged insolvent or bankrupt.

It may be remarked that if Kaufman-Brown Potato Company had been found to be a partner member of the original Gerry Horton Farms partnership which was declared to be a bankrupt by the original adjudication, the evidence in this record would show error .in the adjudication as made since no partnership could be bankrupt if one of its members could meet the firm's liabilities.

## The Matter of Consent

 However, appellee relies upon Section 5, sub. i of the Bankruptcy Act, 11 U.S.C.A. § 23, sub. i to support the conclusion of the referee that appellants consented to such adjudication.[7] The cited subsection provides in part that "In the event of one or more but not all of the general partners of a partnership being adjudged bankrupt, *the partnership property* shall not be administered in bankruptcy, unless by consent of the general partner

or partners · not adjudged bankrupt * * *". (Emphasis added.) Manifestly, such subsection applies only to the administration of firm assets in bankruptcy proceedings relative to an individual partner. See Francis v. McNeal, 1913, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029, L.R.A.1915E, 706; Marnet Oil & Gas Co. v. Staley, 5 Cir., 1914, 218 F. 45; Armstrong v. Fisher, 8 Cir., 1915, 224 F. 97; In re Stringer, 2 Cir., 1918, 253 F. 352; In re Junck & Balthazard, D.C.E.D.Wis.1909, 169 F. 481; Tate v. Brinser, D.C.M.D.Pa.1915, 226 F. 878; In re Gerstenzang, D.C.S.D.N.Y. 1931, 52 F.2d 863; Remington on Bankruptcy (5th ed.) §§ 74, 2888. No consent is required to bring into administration the assets of individual members of a partnership which has properly been adjudged bankrupt even though not all of or any of the individual members thereof have been so adjudicated. See 11 U.S.C.A. § 23; Francis v. McNeal, supra. But, where one or more but not all of the partners are adjudicated bankrupt and the other partner or partners are solvent, the firm remains out of bankruptcy and its property does not come in except by express or implied consent of the solvent member or members. In re Filmar, 7 Cir., 1910, 177 F. 170, and Sturm v. Ulrich, 8 Cir., 1925, 10 F.2d 9, cited and relied upon by the referee accord with the above.[8] See also Collier on Bankruptcy (14th ed.), § 5.19.

 Proceeding upon the holding that Kaufman-Brown Potato Company and Gerry Horton Farms were partners in 1944 we hold that it was error to amend the original prior order of adjudication so as to adjudge such partnership of partnerships. bankrupt.[9]

---

7. We can assume that the referee had in mind Section 5, sub. i in speaking of "consent" because although he did not cite the section he did cite two cases which dealt with it to support his conclusions, namely, In re Filmar, 7 Cir., 1910, 177 F. 170, and Sturm v. Ulrich, 8 Cir., 1925, 10 F.2d 9.

8. The referee also cited in this respect In·re Shields & Mattison, D.C.S.D.Cal. 1925, 14 F.2d 641. But what was decided there was that the court did not have to decide in an incidental bankruptcy pro-

ceeding the right of a single partner to institute bankruptcy proceedings against his partnership, not that consent may authorize adjudication.

9. We mention in passing some other problems discussion as to which is not necessary to our decision here but which lurk in the background of this case. When, if ever, can a partner qua creditor file or join in filing an involuntary petition against his partnership? Cf. Meek v. Centre County Banking Co., 1924, 268 U.S. 426, 45 S.Ct. 560, 69 L.Ed. 1028.

It is more plausible to say that Kaufman-Brown Potato Company, instead of consenting to a partnership adjudication, sought to have adjudicated as bankrupt a person they considered to be an insolvent joint venturer with themselves to whom they had advanced money without repayment. The fact that their arrangement with Gerry Horton Farms turned out in law to be a partnership does not support any phase of fraud or false representation.

However, we do hold that by joining in the involuntary petition and in voting a trustee and by allowing the trustee to possess and dispose of the assets of the combination partnership, appellants are in no position to contest the administration of such property in bankruptcy. Compare In re Harris, D.C.N.D.Ohio, 1899, 108 F. 517; Collier on Bankruptcy (14th ed.) § 5.14. It is just such situation that Section 5, sub. i, supra, in part contemplates. The trustee has had the firm assets, has liquidated them, and no adverse claim has ever been asserted, and is not here asserted. The equities demand that we hold, and we so hold, that appellants have consented to such administration.[10]

### Allowability of Appellant's Claim

The referee ruled that appellants' claim was not allowable at all as against Gerry Horton Farms, the partnership composed solely of Horton and Althouse. As against Gerry Horton Farms (combination partnership) such claim was "disallowed" until the debts of non-member partnership creditors and expenses of administration had been paid in full. Actually, as we have heretofore noted, in the latter instance the claim was deferred. Appellants question such disposition of their claim.

The allowability thereof is governed by the equitable distribution procedure described in Section 5, sub. g of the Bankruptcy Act, 11 U.S.C.A. § 23, sub. g. In brief, the winding up of the affairs of the "combination partnership" is in the hands of appellee-trustee. Against such partnership Kaufman-Brown Potato Company has no collectible claim for capital contributed until all partnership creditors and the expenses of administration are paid in full.

The orders here appealed from which adjudge Gerry Horton Farms (partnership combination) bankrupt are reversed and the order in regard to Kaufman-Brown Potato Company's claim is affirmed. The case is remanded to the district court for further proceedings in conformity with this opinion.

Affirmed, reversed, and remanded.

If he can, is he to be counted in meeting the requirement as to the number of petitioning creditors? See 11 U.S.C.A. § 95, sub. b. Is such so-called "jurisdictional defect" waivable? Cf. General Kontrolar Co. v. Allen, 6 Cir., 1941, 124 F.2d 123. If the involuntary petition here is deemed to have been against Gerry Horton Farms composed of Kaufman-Brown Potato Company and others, what of the question as to joinder of alleged bankrupts not related by actual partnership? Cf. 11 U.S.C.A. § 23, sub.i.; McClyman v. Hamilton, 9 Cir., 180 F.2d 965.

10. Our conclusion dispenses with the necessity of deciding a point not raised by appellants but which we interjected at oral argument of this appeal, namely, whether because it appears on the face of the record that the partnership whose members included Kaufman-Brown Potato Company was engaged in raising potatoes the "farmer" immunity from involuntary bankruptcy was applicable. See 11 U.S.C.A. § 22, sub. b. A discussion thereof would necessarily include the troublesome question of the applicability of such exemption to a partnership all of whose members are not "farmers". Compare 11 U.S.C.A. §§ 1 (17), 203, sub. r., 203, sub. s.(4); H. D. Still's Sons v. American Nat'l Bank, 4 Cir., 1913, 209 F. 749, certiorari denied 1914, 232 U.S. 723, 34 S.Ct. 331, 58 L.Ed. 815; In re Disney, D.C.D.Md.1915, 219 F. 294; Sutherland Medicine Co. v. Rich & Bailey, 22 Am. Bankr. Rep. 85; Collier on Bankruptcy (14th ed.), § 4.15.